IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

MELISSA ELIZABETH DANICZEK,
ESQUIRE,

        Plaintiff,

v.                                      Civil Action No. 3:15cv505

ANTHONY G. SPENCER, ESQUIRE,
et al.,

        Defendant.

### MEMORANDUM OPINION

This matter is before the Court on ANTHONY G. SPENCER'S
RULE 12(b)(6) MOTION TO DISMISS (Docket No. 8). For the reasons
stated below, the motion will be granted in part and denied in
part. The motion is granted as it pertains to Counts Three and
Four, which are dismissed with prejudice. The motion is granted
as it pertains to Count Five, which is dismissed without
prejudice and with leave to re-plead within 21 days of this
opinion. The motion is denied as to the remaining counts.
Additionally, the Court grants Danjczek's request to amend her
Complaint to plead a count of business conspiracy under **Va. Code**
§§ 18.2-499-.500.[1]

---

[1] That request was made in the Plaintiff's Memorandum in
Opposition to Defendant Mahoney's Motion to Dismiss (Docket No.
11, 2-5).

## BACKGROUND

### I.  Factual Background

The Complaint states that on May 15, 2015, Caroline County Commonwealth's Attorney Anthony G. Spencer interrupted a DUI proceeding (in which he was, based on the Complaint and the briefing, apparently not serving as the prosecuting attorney or participating in any legal capacity) to demand that the plaintiff, Melissa Danjczek, give him a DUI Manual that was in Danjczek's possession. (Compl. ¶¶ 13-17). At the time, Danjczek was defending a client on a DUI charge in the General District Court of Caroline County.   In open court, Spencer accused Danjczek of having taken the DUI Manual from his office. (Compl. Exs. 1, 7). When Danjczek would not give Spencer the manual, he shoved her and grabbed the manual. (Compl. ¶ 17). The presiding judge ordered Spencer to return the manual to Dancjzek, and ordered Spencer out of the courtroom. (Compl. ¶ 17).

That afternoon, without further investigation, Spencer filed a criminal complaint accusing Danjczek of larceny. (Compl. ¶ 19-23). In his criminal complaint, Spencer stated that he was the Commonwealth Attorney of Caroline County. (Compl. ¶ 19). Spencer had the resulting warrant of arrest served on Danjczek in the courtroom. (Compl. ¶¶ 21, 24). Danjczek retained counsel the same day. (Compl. ¶ 25).

2

On May 20, 2015, a Caroline County judge appointed a special prosecutor in all cases in which Danjczek served as defense counsel. (Compl. ¶ 27). On May 21, a Caroline County judge appointed a special prosecutor in the larceny case against Danjczek. (Compl. ¶ 29). The appointments served to remove Spencer from all cases involving Danjczek.

On May 19, 2015, John Mahoney, a lawyer, informed Danjczek that the altercation over the manual had "made" Virginia Lawyers Weekly. (Compl. ¶ 26). On May 20, 2015, Mahoney contacted Danjczek again to speak about his running for Commonwealth's Attorney against Spencer. (Compl. ¶ 28). On May 22, 2015, "knowing that Danjczek was represented by counsel and that a Special Prosecutor had been appointed" in the larceny case, Mahoney contacted Danjczek and informed her that he had brokered a deal whereby Spencer would drop the larceny charges against Danjczek if Danjczek dropped all civil and criminal charges against Spencer. (Compl. ¶ 31). Mahoney also stated that "Danjczek's business had been hurt by the situation and that it was only going to get worse." (Compl. ¶ 31). On May 26, 2015, Mahoney asked to speak to Danjczek in person; she told him to speak to her attorney. (Compl. ¶ 32). On May 28, 2015, Mahoney informed Danjczek that he was running for the position of Commonwealth's Attorney. (Compl. ¶¶ 33). On or about June 1, 2015, Mahoney again mentioned to Danjczek that he had met with

Spencer to "figure out how to handle the situation"; Danjczek informed Mahoney to speak to her attorney. (Compl. ¶¶ 34).[2]

On June 2, 2015, Danjczek was informed that she was being removed from the Court Appointed Counsel list for all Caroline County courts. (Compl. ¶ 36). On June 5 and June 9, 2015, Mahoney requested to speak with Danjczek, and Danjczek did not respond. (Compl. ¶¶ 36-37). On June 10, 2015, Mahoney called again, telling Danjczek that the larceny charge had cost Danjczek business, and that she, Mahoney, and Spencer needed to "fix it." (Compl. ¶ 39).

Mahoney also informed Danjczek that he would be writing an article about the incident for the Caroline Progress, and stated "I think you want me thinking happy thoughts when I write the article." (Compl. ¶ 39). Later that day, Sgt. Nutter of the Caroline County Sheriff's Office called Danjczek and informed her of the following: that Spencer was "planning to file a letter to have her removed from the Caroline County Court Appointed Counsel Lists" using "everything he had on Danjczek"; that Mahoney had worked out a reciprocal agreement for Spencer and Danjczek to drop charges against each other, and that

---

[2] How and why it came to be that Mahoney was thusly involved is not disclosed by the record. But, it is certainly a strange set of affairs that one of Spencer's potential opponents for political office was engaged in this matter in the way described in the Complaint.

Spencer would not "bury" the "information he [had] on Danjczek" unless Danjczek agreed; that Spencer "would be making allegations to tarnish Danjczek's reputation if the drama continue[d]"; that Mahoney had requested that Nutter call Danjczek. (Compl. ¶ 40).

"When Mahoney determined that he was not going to be able to persuade Danjczek to accept the officer, he began lobbying efforts to have himself replace the Special Prosecutor" in cases where Danjczek served as defense counsel to "further harass and intimidate Danjczek." (Compl. ¶¶ 42-43). Mahoney was appointed special prosecutor on August 18, 2015, but the judge vacated that order the next day. (Compl. ¶¶ 49-50).

The larceny charge against Danjczek was dismissed with prejudice on June 30, 2015, but not before attracting the attention of several local news outlets, and allegedly "irreparably harm[ing]" Danjczek's reputation as an attorney. (Compl. ¶¶ 44-48).[3]

---

[3] In addition to media coverage of Danjczek's larceny case, on or about August 20, 2015, Spencer "sent a forty-three page document to Virginia Lawyers Weekly and the Richmond-Times Dispatch alleging that Investigator Marshall Ellet of the Caroline County Sheriff's Office had withheld exculpatory evidence," apparently making good on his earlier threat. (Compl. ¶¶ 51-52).

## II. Procedural Background

On August 24, 2015, Danjczek filed the Complaint in this Court asserting five claims against Spencer and three claims against Mahoney and Spencer jointly. The counts against Spencer are:

- Count One: False Arrest and Wrongful Seizure in Violation of 42 U.S.C. § 1983 (Compl. ¶¶ 54-60)

- Count Two: Assault and Battery (Compl. ¶¶ 61-65)

- Count Five: Defamation (Compl. ¶¶ 85-92)

- Count Six: Abuse of Process (Compl. ¶¶ 93-96)

- Count Seven: Malicious Prosecution (Compl. ¶¶ 97-102)

The counts against Spencer and Mahoney were:

- Count 3: Attempted Extortion (Compl. ¶¶ 66-79)

- Count 4: Civil Conspiracy to Commit Extortion (Compl. ¶¶ 80-84)

- Count 8: Intentional Infliction of Emotional Distress (Compl. ¶¶ 103-117)

Mahoney filed his motion to dismiss Counts Three, Four, and Eight, accompanied by a Memorandum in Support. (Docket No. 4) ("Mahoney's 12(b)(6) Mem."). Spencer filed his motion to dismiss all the claims other than Count Two (Assault and Battery), accompanied by a Memorandum in Support. (Docket No. 9) ("Spencer's 12(b)(6) Mem."). Danjczek replied separately to

6

Mahoney (Pl.'s Mem. in Supp. of Opp. to Def. Mahoney's Mtn. to Dismiss, Docket No. 11) ("Pl.'s Mahoney 12(b)(6) Resp.") and to Spencer (Pl.'s Mem. in Supp. of Opp. to Def. Spencer's Mtn. to Dismiss, Docket No. 12) ("Pl.'s Spencer 12(b)(6) Resp."). Mahoney filed a reply. (Def. Mahoney's Reply in Supp. of Mtn. to Dismiss, Docket No. 15) ("Mahoney's 12(b)(6) Reply"). Spencer filed a reply. (Spencer's Rebuttal in Supp. of R. 12(b)(6) Mtn. to Dismiss, Docket No. 14) ("Spencer's 12(b)(6) Reply").

In her response to Mahoney's brief, Danjczek conceded that she had not adequately pled Counts Three and Four, and withdrew those claims. (Pl.'s Mahoney 12(b)(6) Resp. 2). In the same pleading, Danjczek requested leave to amend the Complaint and to include a new claim against Spencer and Mahoney for "business conspiracy" in violation of **Va. Code** §§18.2-499-.500. (Pl.'s Mahoney 12(b)(6) Resp. 2). Spencer and Mahoney opposed the amendment.

Danjczek subsequently dismissed Mahoney from the case (Docket No. 18), and the Court denied Mahoney's motion to dismiss as moot (Docket No. 19).

### ISSUES

The questions before the Court are:

(1) Whether to grant Spencer's Motion to Dismiss as to Counts One, Five, Six, Seven, and Eight, either because (a) Danjczek failed to state a claim upon

7

which relief may be granted, or (b) Spencer enjoys qualified or absolute immunity.

(2) Whether to grant Danjczek's request to amend her Complaint to include a claim for business conspiracy.

### LEGAL STANDARD FOR A MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(6)

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) challenges the legal sufficiency of a complaint. Jordan v. Alternative Resources Corp., 458 F.3d 332, 338 (4th Cir. 2006). Fed. R. Civ. P. 8(a)(2) "requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the ... claim is and the grounds upon which it rests." McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin., 780 F.3d 582, 585 (4th Cir. 2015) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

When deciding a motion to dismiss, a court "draw[s] all reasonable inferences in favor of the plaintiff." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 253 (4th Cir. 2009). However, while the court must "will accept the pleader's description of what happened" and "any conclusions that can be reasonably drawn therefrom," the court "need not accept conclusory allegations encompassing the legal effects of the pleaded facts," **Charles A. Wright & Arthur R. Miller,**

8

**Federal Practice and Procedure** § 1357 (3d ed. 1998); Chamblee v. Old Dominion Sec. Co., L.L.C., No. 3:13CV820, 2014 WL 1415095, *4 (E.D. Va. 2014). Nor is the court required to accept as true a legal conclusion unsupported by factual allegations. Ashcroft v. Iqbal, 556 U.S. 662, 678-79, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). "Twombly and Iqbal also made clear that the analytical approach for evaluating Rule 12(b)(6) motions to dismiss requires courts to reject conclusory allegations that amount to mere formulaic recitation of the elements of a claim and to conduct a context-specific analysis to determine whether the well-pleaded factual allegations plausibly suggest an entitlement to relief." **Wright & Miller**, supra; Chamblee, supra.

In sum, a motion made under Rule 12(b)(6) should be granted if, "after accepting all well-pleaded allegations ... as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999).

## APPLICATION OF MOTION TO DISMISS STANDARD TO DANJCZEK'S CLAIMS

The foregoing principles provide the framework for assessing whether Danjczek has stated facts upon which relief may be granted in each count under attack.

9

I.   **Count One: False Arrest and Wrongful Seizure under 42 U.S.C. § 1983**

A. General Requirements of a § 1983 Claim

"Section 1983, which imposes civil liability on any person who, under color of law, deprives another person of federal constitutional or statutory rights, is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." Amato v. City of Richmond, 875 F. Supp. 1124, 1132 (E.D. Va. 1994) (relying on Albright v. Oliver, 510 U.S. 266, 269, 114 S. Ct. 807, 811, 127 L.Ed.2d. 114 (1994)) (internal quotations omitted). To succeed on a § 1983 claim, a plaintiff must prove by a preponderance of the evidence that: (1) the defendant engaged in conduct which deprived plaintiff of a federal constitutional or statutory right, (2) that the defendant was acting under color of law, and (3) that the acts of that defendant proximately caused the plaintiff's damages. Amato, 875 F. Supp. at 1132-33 (relying on **Devitt, Blackmar, & Wolf, Federal Jury Practice and Instructions** § 103.03).

The second and third elements are not at issue here. Danjczek asserts that Spencer was a state actor at the time (Compl. ¶¶ 7-8), and Spencer characterizes himself as a government official. (Spencer's 12(b)(6) Mem. 7). Danjczek

alleges that as a direct result of the arrest, she suffered mental, physical, and professional harm. (Compl. ¶ 60).

The first element, whether Danjczek made out a violation of a constitutional right cognizable under § 1983, remains in question. Additionally, Spencer argues that, even if Danjczek has adequately pled a violation of a constitutional right, he is protected by qualified and absolute immunity. The Court addresses each of these issues in turn.

### B. False Arrest

Claims of false arrest are cognizable in an action under 42 U.S.C. § 1983 as violations of the Fourth Amendment. McPhearson v. Anderson, 873 F. Supp. 2d 753, 756 (E.D. Va. 2012) (relying on Brooks v. City of Winston-Salem, 85 F.3d 178, 183 (4th Cir. 1996); Day v. Milam, 1:11cv97, 2011 WL 5190809, at *4 (E.D. Va. Oct. 28, 2011)). "A plaintiff's allegations that police seized him pursuant to legal process that was not supported by probable cause and that the criminal proceedings terminated in his favor are sufficient to state a claim alleging that a seizure was violative of the Fourth Amendment." Miller v. Prince George's Cnty., 475 F.3d 621, 630 (4th Cir. 2007) (internal quotations omitted).

To proceed on a claim that "seizure was unreasonable because it followed from a warrant affidavit that was deficient because it was dishonest," "Plaintiff must prove that

11

[defendant] deliberately or with a reckless disregard for the truth made material false statements in his affidavit ... or omitted from that affidavit material facts with the intent to make, or with reckless disregard of whether they thereby made, the affidavit misleading." Miller, 475 F.3d at 627 (internal quotations omitted).[4]

> Reckless disregard can be established by evidence that an officer acted with a high degree of awareness of [a statement's] probable falsity, that is, when viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he

---

[4] In the case of a lay affiant, the affiant is liable when a complaint is made "maliciously and without cause." Malley v. Briggs, 475 U.S. 335, 341-42 (1986). However, government officials are governed by standard of United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).

> Only where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable, Leon, supra ... will the shield of immunity be lost ... The ... question in this case is whether a reasonably well-trained officer in petitioner's position would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant.

Malley, 475 U.S. at 344-45. In the instant case, while the Complaint as a whole indicates that Spencer harbored some inexplicable malice against Danjczek that drove this bizarre sequence of events, and although Danjczek alleges that Spencer's allegations were malicious (Compl. ¶ 55, 59), Malley prohibits the Court from considering that malice. The dispositive question thus becomes Miller's objective test of reckless disregard.

> reported   ....   the   false   statements   or
> omissions must be material.

Id. at 627, 629 (internal quotations omitted) (holding that a jury could find that causing a warrant to be issued for a middle-aged black male when all information indicated that the suspect was a young white male constituted a misrepresentation with reckless disregard for whether the affidavit was misleading). Allegations of negligence or mistake do not provide a sufficient basis for constitutional violations. Miller, 475 F.3d at 627-28; McPhearson, 873 F. Supp. at 757.

In this case, Danjczek alleges two relevant pieces of information:

> 23. Spencer did not request the assistance of law enforcement in obtaining his warrant. No officers of the CCSO were involved in any aspect of Spencer obtaining a warrant. Indeed, no investigation was ever conducted by law enforcement at any time during the pendency of the case against Danjczek.
>
> 55. Spencer knew that his allegations of petit larceny by Danjczek were ... without probable cause ... Spencer knew that there was absolutely no indicia of evidence that the DUI Manual in question was ever the property of Spencer or his office .... This fact became clearly evidence when Judge Reibach ... asked Spencer for the manual ... and returned it directly to [Danjczek].

(Compl.   ¶¶   23,   55).   Danjczek   also   states   that,   before   he procured the warrant, Spencer acknowledged acting out of anger. (Compl. ¶ 18). Danjczek alleges also that Spencer's purpose in

securing the warrant was further evidenced by Spencer's refusal to accept a suggestion that the Sheriff's office should investigate whether Danjczek had stolen the DUI Manual. (Compl. ¶ 21). On this basis, Danjczek alleges that Spencer acted "deliberately or with reckless disregard" for her Fourth and Fourteenth Amendment rights in having her arrested, acting only on his unfounded, uninvestigated suspicion. (Compl. ¶ 59).

The Court must accept Danjczek's alleged facts as true, take the facts in the light most favorable to the plaintiff, and draw all reasonable inferences in Danjczek's favor at the motion to dismiss stage. Iqbal, 556 U.S. at 679; Miller, 475 F.3d at 628-29. Under this standard, Danjczek alleges with sufficient specificity that the warrant was issued and that she was arrested without any investigation into Spencer's suspicions and without any factual basis whatsoever to believe that she stole the DUI Manual. In other words, Danjczek's facts, taken as true, show that there was no probable cause to support her arrest. The Fourth Amendment to the United States Constitution prohibits that conduct, and Danjczek has adequately stated a claim for false arrest.

In relation to the false arrest issue, Spencer makes three miscellaneous assertions of law, all of which are unfounded and do not negate Danjczek's statement of a claim upon which relief may be granted.

14

Spencer first argues that "[a] false arrest claim cannot be maintained when the defendant has been arrested pursuant to a valid arrest warrant." (Spencer's 12(b)(6) Mem. 4) (relying on Dorn v. Town of Prosperity, 375 Fed. App'x 284, 288 (4th Cir. 2010). That contention presupposes that the warrant was valid. As explained above, if the allegations of the Complaint are proved, then the warrant was not validly issued, so that contention must fail. The fact that a magistrate erroneously issues a warrant based on a constitutionally deficient affidavit does not protect the affiant where a reasonably well-trained affiant would have recognized that the affidavit did not demonstrate probable cause. Malley v. Briggs, 475 U.S. 335, 341–42 (1986); Miller, 475 F.3d at 632. The allegations of the Complaint, if proved, would permit a jury to find that Spencer knew that the affidavit was untrue.

Spencer next suggests that the fact that the magistrate eventually issued the warrant is entitled to "great deference." (Spencer's 12(b)(6) Mem. 5) (citing Hicks v. Commonwealth, 281 Va. 353, 360 (2011)). However, the Supreme Court and the Fourth Circuit have both held that, when an affiant intentionally or recklessly causes an arrest warrant to issue on a constitutionally deficient affidavit, the intervening fact that a magistrate grants the warrant does not absolve the affiant of § 1983 liability. Malley, 475 U.S. at 345-46 ("ours is not an

15

ideal system, and it is possible that a magistrate, working under docket pressures, will fail to perform as a magistrate should"); Miller, 475 F.3d at 632.

Finally, Spencer addresses Danjczek's assertion that any theft prosecution was time-barred, such that Spencer lacked probable cause to accuse her of a crime. (Spencer 12(b)(6) Mem. 6). Spencer argues first that a statute of limitations only bars conviction rather than issuance of a warrant, and second that larceny is a continuing offense in Virginia such that statute of limitations did not begin to toll until the DUI Manual was removed from Danjczek's possession. (Spencer 12(b)(6) Mem. 6-7) (relying on Thompson v. Commonwealth, 390 S.E. 2d 198, 200 (1990)). Spencer is correct on the second point. E.g., Gheorghiu v. Com., 280 Va. 678, 685, 701 S.E.2d 407, 411 (2010) ("We have identified larceny as a continuing offense for venue purposes based on the common law legal fiction that each time the stolen goods are taken into a new jurisdiction, there is an illegal asportation and a new crime is committed"). However, the fact that any larceny was within the statute of limitations does not have any effect on Spencer's intentional or reckless false swearing: the affidavit underlying the Complaint was constitutionally deficient whether the larceny was within or outside of the statute of limitations.

## C. Qualified Immunity

Stating a claim under 42 U.S.C. § 1983 also requires that Danjczek overcome any common law immunities which Spencer enjoys as a state official.[5] Defeating a qualified immunity claim under § 1983 requires a two-pronged analysis. A court examines (1) whether the facts alleged by the plaintiff make out a violation of a constitutional right; and (2) whether the right was "clearly established" at the time of the defendant's alleged misconduct. Anderson v. Creighton, 483 U.S. 635, 640 (1987); see also Pearson v. Callahan, 55 U.S. 223, 232 (2009) (eliminating the order of operations in assessing these two prongs); Henry v. Purnell, 501 F.3d 374, 376-78 (4th Cir. 2007). In sum, "[q]ualified immunity is applicable unless the official's conduct violated a clearly established constitutional right." Pearson, 55 U.S. at 232. The plaintiff bears the burden of proof on the first question, whether the violation of a federal right occurred, and the defendant bears the burden of proof on the second question, whether he is entitled to qualified immunity. Henry, 501 F.3d at 377-78.

---

[5] Prosecutors are not entitled to absolute immunity in swearing out testimony which provides the basis for probable cause when "any competent witness" might have performed that function. Kalina v. Fletcher, 522 U.S. 118, 129-30, 118 S. Ct. 502, 138 L. Ed. 2d 471 (1997).

17

As explained above, the facts as pled present a violation of Danjczek's constitutional right to be free from unreasonable seizure. This satisfies the first prong of the analysis.

The second prong of the analysis requires examination of whether that right was clearly established at the time of the violation. As a general matter, "[q]ualified immunity operates to ensure that before they are subjected to suit, officers are on notice their conduct is lawful." Miller, 475 F.3d at 631 (internal quotations omitted). As such,

> [a] clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right .... We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate .... We have repeatedly told courts .... The dispositive question is whether the violative nature of particular conduct is clearly established .... We have repeatedly told courts ... not to define clearly established law at a high level of generality .... This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition.

Mullenix v. Luna, 136 S. Ct. 305, 308 (2015) (internal quotations omitted). In other words, the correct inquiry is whether case law clearly established that a federal law prohibited the official's conduct in the context of the specific situation he confronted. Mullenix, 136 S. Ct. at 309.

18

Spencer violated a clearly established rule. "[T]he Supreme Court has long held that a police officer violates the Fourth Amendment if, in order to obtain a warrant, he deliberately or with reckless disregard for the truth makes material false statements or omits material facts." Miller, 475 F.3d at 631 (relying on Franks v. Delaware, 438 U.S. 154, 155 (1978); United States v. Leon, 468 U.S. 897, 922-23, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984)) (internal citations omitted). See also Torchinsky v. Siwinski, 942 F.2d 257, 264 (4th Cir. 1991) (noting that police officer may be liable under § 1983 where he fails to investigate readily available exculpatory evidence); Clipper v. Takoma Park, Md., 876 F.2d 17, 20 (4th Cir. 1989) (finding that failure to investigation, speculation, and over-reliance on investigative instincts may justify a § 1983 claim for false arrest); BeVier v. Hucal, 806 F.2d 123, 127 (7th Cir. 1986) (noting that the "extent to which a police officer must investigate prior to arrest" is balanced against the existence of extenuating circumstances) (cited approvingly in Sevigny v. Dicksey, 846 F.2d 953, 957 n.5 (4th Cir. 1988)). In Miller, the Fourth Circuit found that a police officer should be aware of this clearly established rule against deliberately or recklessly making false statements in an affidavit. Police officers are not prosecutors, meaning that there is no case directly on point for the proposition that prosecutors should not deliberately or

recklessly make false statements in an affidavit. Nonetheless, the same principles apply with equal, if not greater force, to a prosecutor who is charged with the knowledge that the Fourth Amendment does not countenance affidavits based on falsehoods or deliberate disregard for the truth.

In any event, as explained in Mullenix, a case directly on point is not necessary. Mullenix, 136 S. Ct. at 309. The question is, instead, whether the violative nature of the particular conduct is clearly established and beyond debate in the context of this specific situation. Id. The Court finds Miller's[6] pronouncement that police officers may not deliberately or recklessly make false statements in an affidavit, Miller, 475 F.3d at 631, would have clearly indicated to a reasonable officer in Spencer's position as a prosecutor that his actions violated that established right, satisfying the "clearly established" requirement of Mullenix. Moreover, on the facts of the complaint, there are no extenuating circumstances which would have made Miller's applicability uncertain in this case. Stated simply, a reasonable prosecutor must know that, like a

---

[6] In the Fourth Circuit, a ruling by the Supreme Court of the United States, the Court of Appeals for the Fourth Circuit, or the highest court in the state in which the case arose suffices to "clearly establish" a constitutional violation. E.g., Hill v. Crum, 727 F.3d 312, 322 (4th Cir. 2013). Miller, decided in 2007, "clearly established" the relevant rule prior to Spencer's alleged violations of Danjczek's rights in 2015.

police officer, the prosecutor cannot make deliberately or recklessly false statements.

For the foregoing reasons, Spencer has failed to meet his burden of proof and persuasion on the issue of qualified immunity, and the motion to dismiss Count One will be denied.

## II.  Count Two: Assault and Battery (¶¶ 61-65)

Spencer does not ask the Court dismiss Count Two. (Spencer's 12(b)(6) Mem. 17). There is supplemental jurisdiction over Count Two (and the remaining state law claims at Counts Five through Eight) pursuant to 28 U.S.C. § 1367. All those state law claims arise out of the same facts that gave rise to Count One, and, therefore, the Court will retain supplemental jurisdiction over Count Two and Counts Five through Eight.

## III. Counts 3 and 4: Attempted Extortion (¶¶ 66-79) and Civil Conspiracy - Extortion (¶¶ 80-84)

Danjczek withdrew the claims stated in Counts Three and Fourt (Pl.'s Mahoney 12(b)(6) Resp. 2) in response to Mahoney's Motion to Dismiss, (Mahoney 12(b)(6) Mem. 5-10).

## IV.  Count Five: Defamation (¶¶ 85-92)

Count Five asserts a common law claim of defamation against Spencer.  The Complaint, as pled, does not state a cause of action for defamation because Spencer's criminal complaint

enjoys absolute privilege (also known as judicial privilege). However, the facts included in Danjczek's exhibits state facts entitling Danjczek to relief. Therefore, Count Five will be dismissed without prejudice, with leave to replead within 21 days.

## A. Elements and Defenses

Under Virginia law, defamation requires the allegations and proof of: "(1) publication; (2) of a statement that is actionable; and (3) requisite intent." Andrews v. Virginia Union Univ., No. 3:07CV447, 2008 WL 2096964, at *10 (E.D. Va. May 16, 2008) (relying on Jordan v. Kollman, 269 Va. 569, 575 (2005)).[7] To be actionable, a statement must be false and defamatory. Chapin v. Knight-Ridder, Inc., 993 F.2d 1087, 1092 (4th Cir. 1993). Whether a statement is actionable is a matter of law. Id. In the context of defamation, privilege may be absolute (including "communications made in proceedings pending in a court or before a quasi-judicial body") or qualified (including communications "made in good faith, to and by persons who have corresponding duties or interest in the subject of the communication"). Donner v. Rubin, 77 Va. Cir. 309 (2008) (relying on Gov't Micro Res., Inc. v. Jackson, 271 Va. 29, 42 (2006) (discussing qualified immunity); Linderman v. Lesnick,

---

[7] Counts Five, Six, Seven, and Eight are Virginia state tort claims and are governed by Virginia law.

268 Va. 532, 537 (2004) (discussing absolute immunity)). A plaintiff may overcome qualified privilege by showing malice, Great Coastal Exp., Inc. v. Ellington, 230 Va. 142, 151 (1985), but absolute immunity is a complete defense which cannot be defeated even by a showing of malice. Lindeman, 268 Va. at 537. The existence of privilege is also a question of law; however, the question of whether a defendant has lost or abused a qualified privilege is a question of fact for the jury. Cashion v. Smith, 286 Va. 327, 337 (2013).

### B. As Stated in the Complaint, the Defamation Claim Based on the Criminal Complaint is Defeated by Absolute Privilege

Spencer claims that Danjczek "fails to make any allegation of a statement by Spencer ... The 'statements' on which the Plaintiff bases her claim are the news reports ... Plaintiff does not identify any statement of Spencer's in the news reports and does not contend that any of Spencer's statements identified elsewhere in the Complaint are defamatory." (Spencer's 12(b)(6) Mem. 9). Although Danjczek alleges that several news outlets reported on the charges (Compl. ¶¶ 88-89), she also states that, "[a]s a direct result of the false allegations involving a crime of moral turpitude, Danjczek's reputation as an attorney has been irreparably harmed." (Compl. ¶ 89). In her Memorandum in Opposition, Danjczek subsequently clarified that Spencer's criminal complaint, rather than the news reports, is the basis

23

for her defamation claim. (Pl.'s Spencer Mem. in Opp. 18). The affidavit submitted to support the criminal complaint is a published statement by Spencer.

However, Spencer's affidavit is protected by absolute privilege under Virginia law. See Darnell v. Davis, 190 Va. 701, 708 (1950) (holding that a lay person swearing out a written request to a justice of the peace was entitled to absolute privilege in the context of Virginia's fighting words statute); Potomac Valve & Fitting Inc. v. Crawford Fitting Co., 829 F.2d 1280, 1284 (4th Cir. 1987) (noting co-extensive nature of Virginia fighting words and defamation statutes); see also Linderman, 268 Va. at 537 (noting that a speaker does not lose absolute immunity under any circumstances, even on a showing of malice). Thus, in founding her defamation claim on the warrant, Danjczek has failed to state facts upon which relief may be granted.

However, the exhibits to the Complaint, and even some of its allegations, disclose that Danjczek can plead valid defamation claims on an alternate statement by Spencer. Specifically, Exhibits 1 and 7 to the Complaint include statements that Spencer accused Danzcjek of improperly taking the DUI Manual from his office when she left. (Compl. Exs. 1, 7). These statements by Spencer in the courtroom on May 15, 2015

24

meet all the elements of defamation, without triggering any defenses.

First, Spencer made a non-privileged statement. From the Complaint, from the exhibits accompanying the Complaint, from Spencer's Answer, and from Spencer's 12(b)(6) Brief, it is clear that Spencer was not engaged in a trial, a hearing, or other judicial activity when he accused Danjczek of taking the book from his office. (Compl. ¶¶ 13-17). It appears, instead, that Danjczek was engaged in or just completing a hearing (or perhaps a trial) when Spencer came out of the gallery where he was a spectator and accused her of taking the book from his office.

> Absolute privilege, sometimes called judicial privilege, is broad in scope and applies to communications made in proceedings pending in a court or before a quasi-judicial body .... If the communication is made in such a judicial proceeding, it need only be relevant and pertinent to the case to be protected by the privilege .... The reason for the rule of absolute privilege in judicial proceedings is to encourage unrestricted speech in litigation.

Lindeman, 268 Va. at 537.[8] First, interrupting a defense attorney's advocacy to accuse that attorney of larceny is not "relevant and pertinent to the case." Second, Spencer's

---

[8] In the case of state-employed speakers such as prosecutors, absolute immunity and absolute privilege have overlapping rationales and scopes. Compare Andrews, 266 Va. at 320-22, with Lindeman, 268 Va. at 537.

accusation is an interruption of, rather than part of, the judicial proceedings. Third, the rationale behind absolute immunity simply does not apply to Spencer's statements in the courtroom: unrestricted speech in litigation refers to unrestricted advocacy, not unrestricted interjections from the gallery. Thus, Danzcjek has available a published statement not subject to any defenses,[9] and the record shows that she can properly plead a defamation claim.

The remaining element of defamation is actionability. "To be actionable, the statement must be both false and defamatory." Jordan, 269 Va. at 575. At this stage in a defamation case, a court must accept, as false, any statements that the Complaint alleges to be false. Chapin, 993 F.2d at 1092. Although Danzcjek never explicitly states that she did not steal the book, it is reasonable to infer from what she does say is that the accusation to that effect was false. This satisfies the falsity element of actionability.

---

[9] It may be that Danjczek did not plead the courtroom statements as the basis for her defamation claim because they do not explicitly spell out "Danjczek committed larceny." However, this misses the Hatfill rule that a comment is defamatory as an accusation of a crime so long as ordinary people would interpret the statement as an accusation of a crime. Hatfill v. New York Times Co., 416 F.3d 320, 330-21 (4th Cir. 2005). Under Hatfill, Spencer's assertion that Danjczek took his book is as defamatory as "you committed larceny."

As to the defamatory element of actionability, Virginia law recognizes certain statements as defamatory per se, including statements which impute to the plaintiff the commission of a criminal offense, impugn his fitness for his trade, or prejudice plaintiff in pursuit of his trade. Hatfill v. New York Times Co., 416 F.3d 320, 330 (4th Cir. 2005). Whether a statement is capable of having defamatory meaning is a question of law. Id. According to the exhibits accompanying the Complaint, Spencer accused Danjczek of larceny, a criminal offense. (Compl. Exs. 1, 7). Also, accusing an attorney of a crime also tends to impugn her fitness to practice law, which in turn prejudices her in the pursuit of her trade. Carwile v. Richmond Newspapers, 196 Va. 1, 8 (1954). Because Danjczek did not plead defamation on the basis of Spencer's comments in the courtroom, however, the Court cannot consider them in evaluating the adequacy of Danjczek's pleadings.

In conclusion, Danjczek's exhibits state facts sufficient to prevail on a claim of defamation, but Danjczek's pleadings do not do so. In the interest of justice, the Court will dismiss Count Five without prejudice, with leave to replead within 21 days of this opinion.

**V.    Count Seven: Malicious Prosecution (¶¶ 97-102)**

"In an action for malicious prosecution, the plaintiff must prove four elements: that the prosecution was (1) malicious; (2) instituted by or with the cooperation of the defendant; (3) without probable cause; and (4) terminated in a manner not unfavorable to the plaintiff." Lewis v. Kei, 281 Va. 715, 722 (2011).[10] "An action for malicious prosecution most often is based upon an underlying criminal proceeding maliciously instigated without probable cause .... Malicious prosecution differs from abuse of process in that malicious prosecution lies for 'maliciously causing process to issue.'" Donohoe Const. Co. v. Mount Vernon Associates, 235 Va. 531, 540 (1988) (internal quotations omitted). Spencer does not dispute that Danjczek has adequately plead the second element, that Spencer instituted a criminal proceeding, or the fourth element, that the criminal proceeding terminated in a manner not unfavorable to the plaintiff. (Spencer's 12(b)(6) Mem. 11-15). Instead, Spencer contests lack of probable cause and lack of malice. (Spencer's 12(b)(6) Mem. 12-15). Each will be addressed in turn.

**A. Lack of Probable Cause**

At Virginia law,

---

[10] Count Six comes before Count Seven in the Complaint, but malicious prosecution comes before abuse of process chronologically. Hence, this opinion abandons Danjczek's order of counts because chronological order is more logical.

> in the context of a malicious prosecution
> action, probable cause is defined as
> "knowledge of such facts and circumstances
> to raise the belief in a reasonable mind,
> acting on those facts and circumstances,
> that the plaintiff is guilty of the crime of
> which he is suspected." Andrews v. Ring, 266
> Va. 311, 585 S.E.2d 780, 786 (2003). "The
> determination whether a defendant had
> probable cause to believe that a crime was
> committed is judged with reference to the
> time the defendant took the action
> initiating the criminal charges." Stanley v.
> Webber, 260 Va. 90, 531 S.E.2d 311, 314
> (2000).

Bennett v. R & L Carriers Shared Servs., LLC, 744 F. Supp. 2d
494, 514 (E.D. Va. 2010) aff'd, 492 F. App'x 315 (4th Cir.
2012). The "test" for probable cause is "whether the facts and
circumstances known, or made known, to the [initiator of the
criminal proceedings] are sufficient to justify a prudent and
reasonable man in the belief that an accused is guilty of the
crime charged." Id. at 518 (quoting Giant of Va. v. Pigg, 207
Va. 679 (1967)). As such, the relevant inquiry is whether
Spencer had probable cause to believe that a crime was committed
by Danjczek at the time Spencer swore out the criminal
complaint.

Spencer argues that his criminal complaint showed probable
cause under the Virginia malicious prosecution standard for the
same reason that he had probable cause under the § 1983 standard
for unreasonable seizure. (Spencer's 12(b)(6) Mem. 12). The

argument as to Count Seven, under Virginia law, is lacking in merit here as it was in Count One.

On the § 1983 issue, Spencer argued that Danjczek was not wrongfully seized because she was arrested pursuant to a valid arrest warrant. (Spencer's 12(b)(6) Mem. 4). It is true that a magistrate's issuance of a warrant is pertinent evidence of probable cause (Spencer, 12(b)(6) Mtn. 5) (relying on Hicks v. Commonwealth, 281 Va. 353, 360 (2011)). However, a magistrate's imprimatur does not conclusively establish that probable cause exists. Bennett, 744 F. Supp. 2d at 519-22 (quoting and interpreting Brodie v. Huck, 187 Va. 485 (1948) (noting that Virginia cases "in no way suggest[] that a government official's belief in the guilt of the accused establishes, as a matter of law, that probable cause existed as would preclude a malicious prosecution claim").[11] The magistrate's blessing is relevant but not dispositive to lack of probable cause.

Spencer also argued that probable cause existed because objective facts demonstrated that the Danjczek had committed an offense. (Spencer's 12(b)(6) Mem. 5) (relying on United States v. Galloway, 274 F. App'x 246 (4th Cir. 2008); Bruette v. Montgomery Cnty., 70 F. App'x 88, 95 (4th Cir. 2003)). Probable

---

[11] As noted earlier, "ours is not an ideal system, and it is possible that a magistrate, working under docket pressures, will fail to perform as a magistrate should." Malley, 475 F.3d at 345-46.

cause is, indeed, an objective standard. E.g., Terry v. Ohio, 392 U.S. 1, 22 (1968). But it is an objective standard that asks "would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?" Id. If an officer knows that the facts on which he bases his probable cause determination are false, then probable cause does not exist. Franks, 438 U.S. at 155-56.

Danjczek has alleged that "Spencer knew that there was absolutely no indicia of evidence that the DUI Manual in question was ever the property of Spencer or his office .... This fact became clearly evidence when Judge Reibach ... asked Spencer for the manual ... and returned it directly to [Danjczek]." (Compl. ¶¶ 23, 55). At this stage of the proceedings, the Court must accept Danjczek's alleged facts as true, take the facts in the light most favorable to the plaintiff, and draw all reasonable inferences in Danjczek's favor. Iqbal, 556 U.S. at 679; Miller, 475 F.3d at 628-29. Danjczek has alleged that Spencer knowingly stated untrue facts; if she is correct, this means that Spencer did not have probable cause. While jurors may ultimately choose not to credit her evidence, Danjczek has nevertheless pled facts sufficient that a jury could determine that Spencer did not have probable cause when he initiated the prosecution.

31

**B. Malice**

In Virginia, "malice" means "any controlling motive other than a good faith desire to further the ends of justice, enforce obedience to the criminal laws, suppress crime, or see that the guilty are punished." [Hudson v. Lanier, 255 Va. 330, 332, 497 S.E.2d 471, 473 (1998)]

...   In   Virginia,   under   certain circumstances, the want of probable cause alone *can* serve as legally sufficient evidence to support an inference of malice. See [Giant of Va., Inc. v. Pigg, 207 Va. 679 , 152 S.E.2d 271, 276 (1967)]; see also Oxenham v. Johnson, 241 Va. 281, 402 S.E.2d 1, 2 (1991). In these instances, "there [i]s such a want of probable cause" that an inference of legal malice is warranted. Pigg, supra, 152 S.E.2d at 276 (emphasis added) (The malicious prosecution defendant's "disregard of information communicated to him constituted an aggravated circumstance which supports the finding of the jury that there was such a want of probable cause as warranted an inference of legal malice."); Oxenham, supra, at 2 (The defendant's "lack of probable cause [alone] was sufficient to support an inference of [the defendant's] legal malice" where the defendant had "caused [an] arrest warrant to issue" against the plaintiff solely because the plaintiff had refused to let the defendant search the plaintiff's residence without a search warrant.).

... the fact that [a malicious prosecution plaintiff does] not label and identify explicitly an alleged improper motive ... is of no consequence. The Court is not aware of any authority that requires otherwise.

Bennett, 744 F. Supp. 2d at 521-24.

Spencer argues that "[n]othing in the Plaintiff's Complaint supports a finding that Spencer acted with actual malice .... As Spencer stated in the criminal Complaint, he believed" that Danjczek had committed larceny. (Spencer 12(b)(6) Mem. 13). Spencer neglects that malice may be inferred under aggravating circumstances, including disregard for communications by others and the appearance of reprisal. Bennett, 744 F. Supp. 2d at 521-24 (relying on Pigg, 152 S.E.2d at 276; Oxenham, 402 S.E.2d at 2). According to the Complaint, Spencer ignored the trial judge's indication that he had no claim to the DUI Manual (Compl. ¶ 17), which, as in Pigg, a jury might consider an aggravated circumstance. Moreover, the Complaint alleges that Spencer initiated the larceny prosecution to affect the outcome of the assault and battery charge against himself (Compl. ¶ 98), which is certainly a permissible inference from the alleged facts and is clearly "other than a good faith desire to further the ends of justice, enforce obedience to the criminal laws, suppress crime, or see that the guilty are punished."

Finally, the Complaint alleges that Spencer initiated the prosecution without investigating what were clearly mere suspicions and that he actually spurned a suggestion that an investigation be conducted. (Compl. ¶¶ 21, 23). It also alleges that Spencer proceeded because he was mad. (Compl. ¶ 18). Danjczek has pled facts which, if proved, are adequate to

33

support a jury finding that Spencer initiated a malicious prosecution against her.

For the foregoing reasons, the Motion to Dismiss Count Seven will be denied.

## VI.   Count Six: Abuse of Process (¶¶ 93-96)

> To sustain a cause of action for abuse of process, a plaintiff must plead and prove: (1) the existence of an ulterior purpose; and (2) an act in the use of the process not proper in the regular prosecution of the proceedings .... The distinctive nature of malicious abuse of process lies in the perversion of regularly-issued process to accomplish some ulterior purpose for which the procedure was not intended .... A legitimate use of process to its authorized conclusion, even when carried out with bad intention, is not a malicious abuse of that process .... Process is maliciously abused when it is used oppressively, e.g., as "a whip to force the payment of an alleged indebtedness," [] or as a means of extortion.

Donohoe Const. Co., 235 Va. at 539-40.

Accepting Danjczek's alleged facts as true, taking the facts in the light most favorable to her, and drawing all reasonable inferences in Danjczek's favor, Iqbal, 556 U.S. at 679, Danjczek has pled the first element of abuse of process: Spencer had an ulterior movie of wanting the Virginia State Police investigation against him dropped. (Compl. ¶ 31). See also Montgomery v. McDaniel, 271 Va. 465, 469, 628 S.E.2d 529, 532 (2006) (finding Litigant A naming Litigant B as a defendant

in a cross-bill as a means of pressuring Litigant C into withdrawing Litigant C's suit against Litigant A was a sufficient ulterior motive). Additionally, the Complaint alleges that Spencer initiated the prosecution without investigating what were clearly mere suspicions and that he actually spurned a suggestion that the court security conduct an investigation. (Compl. ¶ 21, 23). It also alleges that Spencer proceeded to swear out the affidavit while and because he was angry. (Compl. ¶ 18).

As to the second element, abuse of process requires an act other than initiation of process that sets the coercive power of the judiciary into play against a person. E.g., Donohoe Const. Co., 235 Va. at 539-40. Taking depositions and taking out an execution on a previously-paid judgment both fulfill the second prong of Donohue. Ely v. Whitlock, 238 Va. 670, 674, 385 S.E.2d 893, 896 (1989); BNX Sys. Corp. v. Nardolilli, 368 F. App'x 339, 342 (4th Cir. 2010).

By declining to withdraw his complaint against Danjczek, Spencer subjected Danjczek to additional coercive power of process when she was required to defend herself against the ongoing criminal case and to appear in Caroline County General District Court on June 30, 2015. (Compl. ¶ 44). Because Spencer's continuing misconduct subjected Danjczek to additional

coercive pressure of the judicial system, the motion to dismiss Count Six will be denied.

## VII. Count Eight: Intentional Infliction of Emotional Distress (¶¶ 103-117)

To state a claim for intentional infliction of emotional distress a plaintiff must plead that

> 1) the wrongdoer's conduct was intentional or reckless; 2) the conduct was outrageous or intolerable; 3) there was a causal connection between the wrongdoer's conduct and the resulting emotional distress; and 4) the resulting emotional distress was severe."

Ogunde v. Prison Health Servs., Inc., 274 Va. 55, 65, 645 S.E.2d 520, 526 (2007); Almy v. Grisham, 273 Va. 68, 77, 639 S.E.2d 182, 186 (2007). Spencer contests the second (outrageous and intolerable) and fourth (severe resulting distress) elements. (Spencer 12(b)(6) Mem. 11-12).

As a preliminary matter, intentional infliction of emotional distress is disfavored, though not completely barred, at Virginia law. Russo v. White, 241 Va. 23, 26 (1991) (noting that intentional infliction of emotional distress' failure to provide a clear definition of the prohibited conduct makes it "not favored"); Almy, 273 Va. at 77 ("Because of problems inherent in proving a tort alleging injury to the mind or emotions in the absence of accompanying physical injury, the

36

tort of intentional infliction of emotional distress is 'not favored' in the law.").

### A. Severe Emotional Distress, and Federal Versus State Pleading Standards

It is worth examining the elements of this claim out of order to note that the Fourth Circuit requires federal courts applying Virginia law to apply laxer standards of pleading than Virginia requires in its own state courts.

In Virginia state courts, "in contrast to a claim of negligence, a plaintiff alleging a claim for intentional infliction of emotional distress must allege in her motion for judgment <u>all facts necessary to establish the cause of action</u> in order to withstand challenge on demurrer." <u>Almy</u>, 273 Va. at 77 (emphasis added).

> Under Virginia law, "liability arises only when the emotional distress is extreme, and only where the distress inflicted is so severe that no reasonable person could be expected to endure it." <u>Russo</u>, 400 S.E.2d at 162. A plaintiff in Virginia state court must plead "with the requisite degree of specificity" the facts giving rise to his claim of severe emotional distress. <u>Jordan</u>, 500 S.E.2d at 219. In <u>Russo</u>, for example, the Supreme Court of Virginia held that the plaintiff's allegations that "she was nervous, could not sleep, experienced stress and 'its physical symptoms,' withdrew from activities, and was unable to concentrate at work" were insufficient to avoid a demurrer on her claim for intentional infliction of emotional distress. 400 S.E.2d at 163. It was important to the court that the plaintiff had not alleged "that she had any

> physical injury caused by the stress, that
> she sought medical attention, that she was
> confined at home or in a hospital, or that
> she lost income." Id.

Hatfill, 416 F.3d at 337. Defendant claims that Danjczek's allegations of financial harm, harm to her professional reputation, stress, clinical anxiety and depression, mood swings, and insomnia (Compl. ¶¶ 113-117) are insufficient to meet the Virginia state courts' high pleading standards for severe emotional distress.

However, the Fourth Circuit has explicitly stated that Fed. R. Civ. P. 8 trumps Virginia's heightened pleading standards for intentional infliction of emotional distress in federal cases governed by state law.

> Rule 8 - applicable in this diversity case –
> did not require [plaintiff to plead at state
> court levels of specificity]. See
> Swierkiewicz, 534 U.S. at 513, 122 S. Ct.
> 992. The complaint alleges that "[a]s a
> result of defendants' defamation here at
> issue, Dr. Hatfill has suffered severe and
> ongoing loss of reputation and professional
> standing, loss of employment, past and
> ongoing financial injury, severe emotional
> distress and other injury." The complaint
> further alleges that publication of
> Kristof's columns inflicted "grievous
> emotional distress" upon Hatfill. These
> allegations are sufficient under Rule 8 to
> give The Times "fair notice of what
> [Hatfill's] claim is and the grounds upon
> which it rests," id. at 512, 122 S.Ct. 992
> (citing Conley, 355 U.S. at 47, 78 S.Ct.
> 99), and they are adequate to state the
> final necessary element of a claim for

> intentional   infliction   of   emotional
> distress.

*Hatfill*, 416 F.3d at 337; *see also* *Perk v. Worden*, 475 F. Supp.

2d 565, 571 (E.D. Va. 2007) (noting the Fourth Circuit's

mandate).

   *Hatfill* was decided before *Iqbal* and *Twombly*, as well as

*Almy*. In light of these intervening cases, at least one Eastern

District of Virginia Court has found that *Hatfill* no longer sets

a lower bar for intentional infliction of emotional distress

pleadings in federal court.

> The complaint's conclusory statement that
> Plaintiffs   suffered   "severe   emotional
> distress["] does not "allow the court to
> draw the reasonable inference that the
> defendant is liable for the misconduct
> alleged." Iqbal, 556 U.S. at 678, 129 S.Ct.
> 1937; Twombly, 550 U.S. at 570, 127 S.Ct.
> 1955. Hatfill was also decided prior to
> Harris and Almy, and the facts that were
> pled with requisite specificity do not
> satisfy the substantive standards set forth
> in those decisions, as discussed above.

*Fuller v. Aliff*, 990 F. Supp. 2d 576, 581 (E.D. Va. 2013)

(Jackson, J.). However, a different Eastern District of Virginia

case, decided even more recently, followed *Hatfill* without

reference to *Fuller*, *Almy*, *Twombly*, or *Iqbal*. *Williams v.

Agency, Inc.*, 997 F. Supp. 2d 409, 415 (E.D. Va. 2014) (Spencer,

J.). Moreover, *Almy*'s discussion of high bars and heightened

pleadings is merely a restatement of *Russo*, and the Fourth

Circuit already held that *Russo* does not supplant Rule 8 at the

motion to dismiss stage. Hatfill, 416 F.3d at 337. If the Fourth Circuit decided that Rule 8 preempts Russo, there is no reason to believe that the Rule 8 does not preempt Almy. Twombly and Iqbal do unquestionably trump Hatfill. However, Twombly and Iqbal demand specificity (rather than conclusory allegations), without altering the type of harm the plaintiff must allege.

Because Hatfill's rejection of Russo functions as a rejection of Almy, and because Iqbal and Twombly govern specificity rather than the types of damages Danjczek may allege in her Complaint, this Court adopts the Hatfill and Williams approach. Under this approach, Danjczek has stated facts upon which she is entitled to relief under her intentional infliction of emotional distress claim at the motion to dismiss stage: like Hatfill, she has pled financial harm, harm to her professional reputation, stress, clinical anxiety and depression, mood swings, and insomnia. Danjczek has pled severe emotional distress with sufficient particularity and severity to meet the Fourth Circuit's pleading requirements.

## B. Intentional or Reckless Conduct; Outrageous Conduct

A key element of the claim asserted in Count Eight is that Spencer acted either intentionally or recklessly "such that [he] knew or should have known that [his] act ... would cause [plaintiff] severe emotional distress." Almy, 273 Va. 77-78 ("This element of the tort is set forth in [plaintiff's]

40

allegations that [defendants] acted intentionally ... with the specific purpose of causing her humiliation, ridicule, and severe emotional distress. [Plaintiff] further alleged that these three defendants intentionally manufactured evidence to cause her this distress, and that [one defendant] expressed his intent to have her 'really, really suffer'").

Outrageousness is a question of law. Womack v. Eldridge, 215 Va. 338, 342 (1974). Under Virginia law, neither tortious intent, criminal intent, malicious intent, nor conduct worthy of punitive damages is sufficient to fulfill the "outrageous" element of an intentional infliction of emotional distress claim. Russo, 241 Va. at 27.

> Liability has been found only where the
> conduct has been so outrageous in character,
> and so extreme in degree, as to go beyond
> all possible bounds of decency, and to be
> regarded as atrocious, and utterly
> intolerable in a civilized community."

Id. (quoting Restatement (Second) of Torts, § 146 (d) (1965). Thus, liability does not extend to "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." Gaiters v. Lynn, 831 F.2d 51, 53 (4th Cir. 1987).

Taking the facts pled in the Complaint as true, Danjczek has pled a parade of horribles against Spencer: behaving so poorly in cases involving Danjczek's clients that the court appointed a special prosecutor to replace Spencer in her cases

41

(Compl. ¶ 111); verbally harassing Danjczek in the courtroom on May 15, 2015 in the course of a case in which he was not even involved (Compl. ¶¶ 13-16); assaulting Danjczek in the courtroom on May 15, 2015 (conduct in which no lawyer may ever engage) (Compl. ¶ 17); swearing out a warrant that he knew lacked probable cause and having Danjczek served in the courtroom (Compl. ¶¶ 20-24); having Danjczek removed from the Court Appointed Counsel list (Compl. ¶¶ 35, 40); threatening to release, and then releasing, documents to trade publications which damaged Danjczek's reputation (Compl. ¶¶ 51-52).[12]

Individually, acts undermining a plaintiff's employment or abusing a plaintiff are not outrageous. E.g., Harris v. Kreutzer, 271 Va. 188, 201, 624 S.E.2d 24, 31 (2006) (holding verbal abuse not outrageous); Earley v. Marion, 540 F. Supp. 2d 680, 690 (W.D. Va. 2008) aff'd, 340 F. App'x 169 (4th Cir. 2009) (rumors about fitness for profession not outrageous); Karpel v. Inova Health Sys. Servs., Inc.., No. CIV.A. 96-347-A, 1997 WL 38137, at *7 (E.D. Va. Jan. 27, 1997) aff'd sub nom. Karpel v.

_____

[12] "Spencer ... sent a forty-three page document to Virginia Lawyers Weekly and the Richmond-Times Dispatch alleging that Investigator Marshall Ellet of the Caroline County Sheriff's Office had withheld exculpatory evidence ... This is the information that Spencer promised to 'bury in the sand' if Danjczek accepted his offer." (Compl. ¶¶ 51-52). The Complaint is unclear exactly how this pertains to Danjczek, but that can be sorted out in the discovery process.

Inova Health Sys. Servs., 134 F.3d 1222 (4th Cir. 1998) (causing plaintiff's firing was not outrageous); Warner v. Buck Creek Nursery, Inc., 149 F. Supp. 2d 246, 265 (W.D. Va. 2001) (defendant falsely stating that plaintiff was fired for theft, with intention to destroy plaintiff's reputation in community, is not outrageous); Goddard v. Protective Life Corp., 82 F. Supp. 2d 545, 558 (E.D. Va. 2000) (mere professional negligence not outrageous); Simmons v. Norfolk & W. Ry. Co., 734 F. Supp. 230, 232 (W.D. Va. 1990) (being cursed and screamed at in the workplace not outrageous).

However, exacerbating factors can make otherwise non-outrageous actions become outrageous; several of those exacerbating factors recognized in Virginia law are present in this case. First, the conduct, manner, or means associated with undermining a plaintiff's employment may create outrageousness. See, e.g., Tharpe v. Lawidjaja, 8 F. Supp. 3d 743, 783 (W.D. Va. 2014) (posting nude pictures of plaintiff on the internet and linking them to plaintiff's business's website was outrageous). Second, allegations may be outrageous in the aggregate: the duration and cumulative nature of misconduct is relevant to finding outrageousness. E.g., Faulkner v. Dillon, 92 F. Supp. 3d 493, 501 (W.D. Va. 2015) (noting repeated misconduct over a period of years). Third, the abuse of a position of authority is also relevant to finding outrageousness. Baird v. Rose, 192 F.3d

462, 472 (4th Cir. 1999) (noting that "[t]he extreme and outrageous character of the conduct may arise from an abuse by the actor of a position ... which gives him actual ... authority over the other") (citing Restatement (Second) of Torts, § 46, cmts. e, f (1965)).

While none of Danjczek's facts pled is outrageous individually, a reasonable jury could find that Spencer's prolonged, vindictive, and multifaceted campaign of misconduct rose to the level of "outrageous and intolerable" conduct going "beyond all possible bounds of decency" by taking into account the methods by which he went about the misconduct, the duration and repeated character of the misconduct, and the fact that much of his misconduct occurred while he wore the authoritative mantle of Commonwealth's Attorney. Dancjzek has accordingly stated a legally plausible claim for relief. Spencer's motion to dismiss Count Eight will be denied.[13]

### APPLICABILITY OF ABSOLUTE IMMUNITY
### TO COUNTS FIVE, SIX AND SEVEN

Spencer was, during all the relevant conduct, the Commonwealth's Attorney for Caroline County. He thus contends

---

[13] "Given the fact-intensive nature of the [intentional infliction of emotional distress] inquiry, the claim is better reserved for summary judgment or trial." Harrison v. Prince William Cnty. Police Dep't, 640 F. Supp. 2d 688, 710 (E.D. Va. 2009).

that he is entitled to absolute immunity for Count Five (defamation), Count Six (abuse of process), and Count Seven (malicious prosecution).

As to Count Seven, the Court denies the motion to dismiss Danjczek's malicious prosecution claim based on absolute immunity, because Spencer has not shown that absolute immunity applies to swearing out a criminal complaint; however, the Court will permit further briefing on follow-up issues at a later time. As to Count Six, the Court denies the motion to dismiss Danjczek's abuse of process claim based on absolute immunity because Spencer was not serving as a state officer during the alleged abuses. As to Count Five, it is not necessary to decide whether Spencer is entitled to absolute immunity from a defamation claim for swearing out the criminal complaint, because that act is clearly protected by the defamation doctrine of absolute privilege.

## A.   Preliminary Issue: Virginia State Law Governs Immunities for Counts Five, Six and Seven

Counts Five, Six and Seven are based in Virginia's tort law.  Hence, they are governed by state law and are not subject to federal defenses.

The Supreme Court of Virginia has explicitly held that state common law, not federal common law, governs applicability of absolute prosecutorial immunity in a case of

malicious prosecution. Andrews v. Ring, 266 Va. 311, 320-21 (2003). Accordingly, the Supreme Court's pronouncements on federal common law of absolute prosecutorial immunity (including the Imbler family) do not define Virginia state law on the defense of absolute prosecutorial immunity. Andrews, 266 Va. at 320-21 (citing to Burns v. Reed, 500 U.S. 478 (1991); Imbler v. Pachtman, 424 U.S. 409 (1976)). See also, e.g., City of Milwaukee v. Illinois & Michigan, 451 U.S. 304, 314 n.7 (1981) (noting that, when there is both state law and federal common law on point, when "[i]f state law can be applied, there is no need for federal common law"). Spencer's reliance on federal principles of absolute immunity is therefore misplaced.

However, Virginia law of absolute immunity hews closely, though not exactly, to federal common law. The Supreme Court of Virginia has, in some circumstances, recognized broader prosecutorial immunity under Virginia state law than is available at federal law. Vuyyuru v. Jadhav, No. 3:10-CV-173, 2011 WL 1483725, at *10 n.9 (E.D. Va. Apr. 19, 2011) (noting that Andrews extended absolute prosecutorial immunity to prosecutors advising a layperson to file a criminal complaint, contrary to federal law finding that absolute immunity does not extend to a prosecutor's act of advising police officers). For the most part, however, the Supreme Court of Virginia has not endeavored to re-invent the wheel, and does cite federal cases

when it agrees with them. E.g., Andrews, 266 Va. at 320 (citing the United States Supreme Court's decision in Imbler immediately before pronouncing that the Virginia Supreme Court is the ultimate authority on Virginia common law).

The Virginia Supreme Court's willingness to cite federal cases is not surprising considering that both federal prosecutorial immunity and state prosecutorial immunity are both common law defenses that share a common origin and rationale. See, e.g., Buckley v. Fitzsimmons, 509 U.S. 259, 268 (1993); Andrews, 266 Va. at 320. The willingness of the Supreme Court of Virginia to cite federal cases, together with the common origin and rationale of the state and federal doctrines, signal that federal immunity decisions are persuasive when there are no Virginia immunity decisions on point. See Byelick v. Vivadelli, 79 F. Supp. 2d 610, 623 (E.D. Va. 1999) (noting that, when confronted with uncertain state law, a federal court applying state law in diversity cases must predict what course the highest court in the state would take); see also Warren Bros. Co. v. Cardi Corp., 471 F.2d 1304, 1307 (1st Cir. 1973) (noting that, in the absence of state law cases, federal cases are "relevant" to a court's determination of what the state "courts would decide if faced with the issues before us").

Having established that Virginia law provides the dispositive source of law, and that federal law plays a

persuasive role, the next step is to apply Virginia law to the claims for defamation, malicious prosecution, and abuse of process.

At Virginia law, Spencer bears the burden of establishing each element of his immunity defense. Tomlin v. McKenzie, 251 Va. 478, 480 (1996); see also Jordan v. Shands, 255 Va. 492, 499 (1998).

**B. Absolute Immunity and Defamation**

It is not necessary to determine whether Spencer enjoyed absolute prosecutorial immunity in swearing out the criminal complaint against Danjczek, because, as discussed above, the Virginia doctrine of absolute privilege protects all affiants from defamation claims. Darnell, 190 Va. at 708 (holding that lay man swearing out a written request to a justice of the peace was entitled to absolute privilege in the context of Virginia's fighting words statute); Potomac Valve & Fitting Inc., 829 F.2d at 1284 (noting co-extensive nature of Virginia fighting words and defamation statutes); see also Linderman, 268 Va. at 537 (noting that a speaker does not lose absolute immunity under any circumstances, even on a showing of malice).[14]

---

[14] Spencer's conduct in the May 15, 2015 hearing does not enjoy the same absolute privilege, because the pleadings do not even suggest that Spencer was acting in a prosecutorial capacity or participating in the judicial process. Because Spencer was not engaged in judicial proceedings, he is not entitled to absolute

## C. Absolute Immunity and Malicious Prosecution

"In an action for malicious prosecution, the plaintiff must prove four elements: that the prosecution was: (1) malicious; (2) instituted by or with the cooperation of the defendant; (3) without probable cause; and (4) terminated in a manner not unfavorable to the plaintiff." Lewis, 281 Va. at 722. "An action for malicious prosecution most often is based upon an underlying criminal proceeding maliciously instigated without probable cause ... Malicious prosecution differs from abuse of process in that malicious prosecution lies for 'maliciously causing process to issue.'" Donohoe Const. Co., 235 Va. at 540 (internal quotations omitted). The adequacy of Danjczek's pleadings is discussed above, but at the outset it is necessary to examine the elements of malicious prosecution to see when the tort occurred and whether, at that time, Spencer was acting in a capacity that would permit the immunity he claims.

---

immunity for his statements in the courtroom, Andrews, 266 Va. 320-22, in the same manner that a lay heckler would not receive absolute immunity for interrupting court proceedings with non-judicial business.

However, as discussed supra, Danjczek did not properly plead defamation based on Spencer's conduct at the May 15, 2015 hearing, and it is not the Court's place to rewrite a represented plaintiff's papers to better state a cause of action. She has been given leave to amend Count Five.

The active element of malicious prosecution is the second element, "instituted by or with the cooperation of the defendant." This Court previously determined that

> to find that the "instituted by, or with the cooperation of" element has been satisfied, the Court must ascertain whether a defendant affirmatively, actively, and voluntarily took steps to instigate or to participate in the arrest of the defendant, and whether the defendant exercised some level of control over the decision to have the plaintiff arrested. A defendant instigates or cooperates in the proceedings by either taking the original steps to initiate the proceeding (here the arrest) or by subsequently adopting and ratifying the steps that others have already taken to initiate proceedings.

Bennett, 744 F. Supp. 2d at 511-12 (also noting that someone who passively responds police requests for information cannot be held liable for malicious prosecution). According to the Complaint, Spencer took the relevant, affirmative and voluntary act when he swore out the affidavit for larceny and "demanded that ... Danjczek be arrested while she was in the courtroom." (Compl. ¶ 19-20).[15]

_____

[15] Absolute immunity is irrelevant to the malicious prosecution after this point for two reasons. First, malicious prosecution deals with initiation of process; after that, any bad acts fall under the abuse of process umbrella. Donohoe Const. Co., 235 Va. at 540. Second, the Complaint alleges no further bad actions by Spencer between his swearing out the affidavit and requesting Danjczek's arrest on May 15, 2015 (Compl. ¶¶ 19-20) and his replacement by a special prosecutor in Danjczek's larceny case on May 21, 2015, (Compl. ¶ 29), at which point Spencer stopped

For the purposes of absolute immunity, the Court asks whether, under Virginia law, Spencer was acting in his prosecutorial capacity in swearing out the affidavit and requesting Danjczek's arrest.

> The process by which an accused may be charged with a criminal offense in Virginia includes indictment, presentment, information, arrest warrant, or summons. When a prosecutor is involved in the initiation of the criminal process, it may take the form of preparation of an indictment for consideration by a Grand Jury, direction to a law enforcement officer to obtain a warrant or summons, or advice to a law enforcement officer that sufficient probable cause exists for the obtaining of a warrant or a summons. For the purposes of determining a prosecutor's absolute immunity from suit, these are distinctions without a material difference. In each case where a prosecutor is involved in the charging process, under Virginia law, that action is intimately connected with the prosecutor's role in judicial proceedings and the prosecutor is entitled to absolute immunity from suit for such actions.

Andrews, 266 Va. at 321 (2003). Criminal complaints are notably absent from this list. In Virginia, any lay person can file a criminal complaint, and such lay persons are not entitled to absolute immunity.[16] E.g., Andrews, 266 Va. at 317 (noting that

---

acting in the prosecutorial capacity which gives rise to his absolute immunity defense.

[16] Although complaining witnesses are entitled to absolute privilege in defense to defamation.

where a building inspector filed a criminal complaint, the act of filing that criminal complaint did not enjoy absolute immunity).[17] In his criminal complaint, Spencer stated "I am the Commonwealth Attorney of Caroline County" (Compl. Ex. 3), but that statement alone does not transform Spencer's role from that of a lay complainant to that of a state prosecutor. Danjczek alleges that, in swearing the affidavit, Spencer was a "complaining witness." (Pl.'s Spencer 12(b)(6) Mem. in Opp. 23). In his Reply, Spencer reiterates that the criminal complaint was a "judicial proceeding" for the purposes of absolute privilege (a defense to defamation) but does not return to the issue of whether he was acting as a prosecutor in swearing out the criminal complaint (which would trigger absolute immunity and a defense to malicious prosecution). (Spencer's 12(b)(6) Reply

---

[17] The building inspector argued, in the alternative, that he was entitled to the "same qualified immunity extended to police officers for actions taken in good faith and with probable cause." Andrews, 266 Va. at 325-26. Rather than ruling on the claim, the court found that the inspector had not alleged sufficient facts to raise the defense. This leaves the question of whether anyone who swears out a criminal complaint is entitled to qualified immunity as a matter of Virginia law up in the air. Ultimately, the question is not particularly relevant, because malicious prosecution requires the plaintiff to prove that the defendant acted with malice and without probable cause. If the defendant acted with good faith and with probable cause, then negating the plaintiff's case-in-chief and raising a qualified immunity defense are the same thing. Additionally, Spencer does not raise qualified immunity with respect to the malicious prosecution charge, so it is unnecessary to address that at this time.

10). See also Kalina v. Fletcher, 522 U.S. 118, 129-30, 118 S. Ct. 502, 138 L. Ed. 2d 471 (1997) (finding that absolute immunity did not protect prosecutor who swore out facts in a Washington state "Certification for Determination of Probable Cause" where prosecutor "[i]n doing so ... performed an act that any competent witness might have performed").

At this point, Spencer has not met his burden of establishing that he is entitled to absolute immunity under Virginia law. It is possible, albeit unlikely, that he was acting in his role as a prosecutor, and may provide further briefing on this matter at a later stage. On the current record, it appears more likely that he was acting in the role of a lay complaining witness. Thus, on this record, Spencer has not borne his burden. Therefore, the motion to dismiss Count Seven on the ground of absolute immunity will be denied.

### D. Absolute Immunity and Abuse of Process

Spencer was replaced by a Special Prosecutor less than a week after Danjczek's arrest. (Compl. ¶ 24, 28). Once that happened, Spencer was, in effect, a complaining witness rather than a state official in the continuation of the criminal case against Danjczek. Because Spencer was not then acting in his official capacity, he is not entitled to absolute immunity.

## LEAVE TO PLEAD BUSINESS CONSPIRACY

Having withdrawn her claims for civil extortion and conspiracy, Danjczek requests leave to amend her Complaint to allege a violation of **Va. Code.** § 18.2-499, which states:

> A. Any two or more persons who combine, associate, agree, mutually undertake or concert together for the purpose of (i) willfully and maliciously injuring another in his reputation, trade, business or profession by any means whatever or (ii) willfully and maliciously compelling another to do or perform any act against his will, or preventing or hindering another from doing or performing any lawful act, shall be jointly and severally guilty of a Class 1 misdemeanor. Such punishment shall be in addition to any civil relief recoverable under § 18.2-500.

**Va. Code** § 18.2-500 states that:

> A. Any person who shall be injured in his reputation, trade, business or profession by reason of a violation of § 18.2-499, may sue therefor and recover three-fold the damages by him sustained, and the costs of suit, including a reasonable fee to plaintiff's counsel, and without limiting the generality of the term, "damages" shall include loss of profits.

Under the Federal Rules of Civil Procedure,

> (1) Amending as a Matter of Course. A party may amend its pleading once as a matter of course within:

> > (A) 21 days after serving it, or
> > (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a

54

> motion under Rule 12(b), (e), or (f),
> whichever is earlier.

Fed. R. Civ. P. 15(a). Danjczek filed her Complaint on August 24, 2015. Mahoney filed his Motion to Dismiss on September 15, 2015; Spencer filed his Motion to Dismiss on September 17. Danjczek filed her Memorandums in Opposition on September 28, 2015. Danjczek is ineligible to supplement under Fed. R. Civ. P. 15(a)(1)(A), because her request to supplement occurred more than 21 days after she filed her Complaint. However, Danjczek's Complaint was a pleading to which responsive pleading is required, and Danjczek filed her request to supplement within 21 days after Spencer and Mahoney filed their motions under Rule 12(b)(6). As a preliminary procedural matter, Danjczek has timely requested leave to supplement under Fed. R. Civ. P. 15(a)(1)(B).

Spencer argues that a Fed. R. Civ. P. 15 motion to amend should be denied when the amendment would be futile. (Spencer's 12(b)(6) Reply 12-13) (relying on Johnson v. Orowheat Foods Co., 785 F.2d 503, 509 (4th Cir. 1986).[18] Spencer argues that

---

[18] Before he was dismissed from the suit, Mahoney made an additional attack on the informal nature of Danjczek's request. (Mahoney's 12(b)(6) Reply 6) (citing Estrella v. Wells Fargo Bank, N.A., 497 F. App'x 361, 362 (4th Cir. 2012) (when "the plaintiff fails to formally move to amend and fails to to provide the district court with any proposed amended complaint or other indication of the amendments he wishes to make," the district court does not "abuse its discretion" in not granting

Danjczek's Complaint cannot support a business conspiracy claim (making any motion to amend futile) because the malicious conduct must be directed at the plaintiff's business, not at her person. (Spencer's 12(b)(6) Reply 12-13). In another case where an attorney sued for business conspiracy, a court in this district noted that

> [a] right of action is afforded under § 18.2-499 "only when malicious conduct is directed at one's business, not one's person." Buschi v. Kirven, 775 F.2d 1240, 1259 (4th Cir. 1985). Injury to personal reputation and interest in employment are clearly excluded from the scope of the statute's coverage. Andrews v. Ring, 266 Va. 311, 319, 585 S.E.2d 780 (Va. 2003). The facts set forth in the Complaint indicate that any alleged conspiracy ... was directed at Plaintiff, not his business. While Plaintiff's future employment prospects and his ability to retain clients may have been affected as a result of the acts of the alleged conspirators, § 18.2-499 does not provide relief for such injuries. See, e.g., Mansfield v. Anesthesia Assocs., 2008 U.S. Dist. LEXIS 34732, 10-11, 2008 WL 1924029 (E.D. Va. Apr. 28, 2008) .... Furthermore, this Court has previously rejected an argument similar to Plaintiff's contention that because of the nature of his profession, any injury to his personal reputation is also necessarily an injury to

---

the motion); Cozzarelli v. Inspire Pharms., Inc., 549 F.3d 618, 630-31 (4th Cir. 2008) (finding no abuse of discretion in declining to grant a motion to amend that was made in an opposition to dismiss). As shown by Mahoney's own citations, these cases only say that a district court may decline to entertain informal motions to amend, not that a district court must decline to entertain informal motions to amend.

his business. See Moore v. Allied Chem.
Corp., 480 F.Supp. 364, 375 (E.D. Va. 1979).

Spencer v. Am. Int'l Grp., Inc., 3:08CV00591, 2009 WL 47111, at
*11 (E.D. Va. Jan. 6, 2009) (Moon, J.). First, Spencer and this
case must be distinguished because of the sizes of the practices
involved. In Spencer, the plaintiff accused defendants of
pinning the blame for a failed appeal on him, rather than on his
co-counsel. Id. Spencer worked for mid-sized firm Bowman &
Burke, LLP. In Spencer, it was possible for the conspirators to
damage the reputation of one attorney in a mid-sized firm
without injuring the business which employed him. In this case,
Danjczek appears to be a solo practitioner, meaning that it is
impossible to damage her reputation without injuring her
business. Second, Danjczek's Complaint does not merely state
that Mahoney and Spencer injured her reputation: she states that
they directly injured her business by having her removed from
the Court Appointed Attorney list. (Compl. ¶¶ 35, 40). Because
the Complaint alleges that Spencer and Mahoney worked together
on this (Compl. ¶ 40), Danjczek has pled sufficient facts to
state a claim that Spencer and Mahoney combined for the purpose
of willfully and maliciously injuring Danjczek in her business,
either because reputation and business are inextricable for a
solo practitioner or because removing Danjczek from the court
appointed attorney list directly injured her business.

57

## CONCLUSION

For the reasons stated above, ANTHONY G. SPENCER'S RULE 12(b)(6) MOTION TO DISMISS (Docket No. 8) is granted in part and denied in part. The motion is granted as it pertains to Counts Three and Four, which are dismissed with prejudice. The motion is granted as it pertains to Count Five, which is dismissed without prejudice and with leave to re-plead within 21 days of the date of this opinion. The motion is denied as to the remaining counts. Additionally, the Court grants Danjczek's request to amend her Complaint to plead a count of business conspiracy.

It is so ORDERED.

/s/                    _REP_
Robert E. Payne
Senior United States District Judge


Richmond, Virginia
Date:  January _11_, 2016