IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

Melissa Elizabeth Danjczek, Esq.

Plaintiff,

v.                                                          CIVIL ACTION NO. 3:15-CV-505-REP

Anthony G. Spencer, Esq.

Defendant.

## FIRST AMENDED COMPLAINT

Plaintiff, Melissa Danjczek ("Danjczek), by counsel, the Law Offices of Vincent L. Robertson, PLC submits this First Amended Complaint against defendant Anthony G. Spencer, Esq. ("Spencer"). All previously submitted exhibits are hereby incorporated by reference as set out fully and attached in the amended Complaint.

### Introduction

1.      This is a civil rights action pursuant to 42 U.S.C. §1983 seeking damages against the defendant in his individual and official capacity for false arrest and wrongful seizure that denied Danjczek rights guaranteed to her under the 4th and 14th Amendments of the Constitution of the United States. Danjczek also asserts pendent causes of action against the defendant for assault and battery in violation of Virginia Code §18.2-57; combinations to injure others in their reputation, trade, business or profession, in violation of Virginia Code §§18.2-499 and18.2- 500; defamation; malicious abuse of process; malicious prosecution and intentional infliction of emotional distress under the common law of Virginia.

### Jurisdiction

2.      This Court has general federal question jurisdiction pursuant to 28 U.S.C. §1331,

and §1343. This Court also has supplemental jurisdiction over the state law claims and additional parties pursuant to 28 U.S.C. §1367.

3.      Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b) because the acts and events giving rise to this action occurred within the geographical boundaries of the Richmond Division of the United States District Court for the Eastern District of Virginia.

**Parties**

4.      Danjczek is an adult female citizen of Virginia residing in Hanover County, Virginia.   Danjczek is duly licensed to practice law and is in good standing with the Virginia Supreme Court and the Virginia State Bar. Her law office and principle place of business is in Caroline County, Virginia.

5.      Spencer is an adult male citizen of Virginia residing in Caroline County, Virginia; Spencer is a "person" as the word "person" is used in 42 U.S.C. §1983.

6.      Spencer is duly licensed to practice law in Virginia. He is in good standing with the Virginia Supreme Court and the Virginia State Bar.

7.      Spencer is an attorney that has been the Commonwealth's Attorney for Caroline County, Virginia since 2007, having been first elected to the position in November 2007 and serving continuously since taking office in 2008.

8.      Any actions of Spencer alleged in this complaint were taken under the color of state law using the powers of his position as Caroline County's Commonwealth's Attorney.

9.       The people of Caroline chose not to re-elect Spencer to a third term.

10.      During the month of May 2015, or thereabouts, John Mahoney, a defense attorney with law offices in Fredericksburg, Virginia, announced his candidacy to run for the position of Caroline County Commonwealth's Attorney. At time of the original complaint, he was running

2

unopposed[1].

**Facts**

11.     On the afternoon of May 15, 2015, Spencer approached Danjczek in open court while she was defending a client on a charge of Driving under the Influence (DUI) in the Caroline County General District Court.

12.     Spencer was not the attorney representing the Commonwealth in the DUI matter.

13.     Spencer began to question Danjczek concerning her referral to a DUI manual while she was defending her client in the DUI matter. In the middle of trial, while Danjczek was at the Judge's bench and in front of Judge Reibach, Danjczek's client, courtroom personnel, sheriff deputies, the general public and other members of the Bar, Spencer demanded that Danjczek give him the DUI manual several times. Danjczek did not respond to him and continued with the defense of her client.

14.     At the conclusion of Danjczek's case, Spencer again approached her in open court and demanded that she give the manual to him. Danjczek asked the Judge, who was still on the bench, to instruct Spencer to leave her alone. The Judge instructed Spencer to take the matter outside of the courtroom.

15.      Spencer ignored the Judge's instruction and responded by saying; "Fine. I will just take it myself."   Danjczek picked up her items from the table as Spencer walked toward her and grabbed the manual from Danjczek. While doing so and using great force, Spencer used his forearm to shove Danjczek so that he could take the manual. The force of Spencer's shove

---

[1]  Spencer would later announce his intention to run as a write-in candidate. In doing so, he released a YouTube video entitled "the Whole Truth". In the video, Spencer discloses the deal made between he and Mahoney whereby he would not oppose Mahoney's candidacy in exchange for a position as Deputy Commonwealth's Attorney for Caroline County. Spencer specifically states that the nexus for the need to enter into the agreement arose from the highly publicized dispute over a DUI manual.

caused Danjczek to fall against defense counsel's table and drop all of her papers and books. (Plt. Ex. No.1& 2 – Stmts. of Inv. Wright CCSO & Atty. P. Bynum) Danjczek requested that the Judge cite Spencer for contempt of Court. The Judge ordered Spencer to hand him the DUI manual. Spencer complied. Judge Reibach returned the DUI manual to Danjczek and ordered Spencer out of the courtroom. The Judge then ordered a recess of court.

16.     Later that afternoon Spencer called Deputy Wright of the Caroline County Sheriff's Office (CCSO) to Spencer's office. While in his office, Spencer asked Wright if he had seen what took place in court between himself and Danjczek. The deputy answered in the affirmative. Spencer then asked Wright whether Spencer had assaulted Danjczek. Wright responded by stating that "from what he saw, he (Spencer) did." Wright then stated that he believed that the situation could have been handled differently. Spencer then stated that: "he was just so mad about the whole thing."

17.     Spencer then went to the Caroline County Magistrate's Office (CCMO) to swear out a warrant against Danjczek. Spencer in his criminal complaint stated that: "I am the Commonwealth Attorney of Caroline County and have been so continuously since 10/2/2009." (Plt. Ex. No.3- Criminal Compl.).

18.     Once Spencer found a Magistrate that would issue the warrant, Spencer demanded that the Magistrate have Danjczek be arrested while she was in the courtroom.

19.     Deputy Sadler of the CCSO asked Spencer if he wished to refer the matter to the CCSO for investigation. Spencer declined to do so and pursued the matter against Danjczek personally. (Plt. Ex. No. 4 – Dep. Sadler's Stmt.).

20.     During the courtroom incident, there were present at least four sheriff's deputies available to assist and investigate any actions of Danjczek on behalf of Spencer if so requested.

4

Each sheriff's deputy present wrote statements related to the incident. (Plt Ex. Nos.1& 4-7)

21.     Spencer did not request the assistance of law enforcement in obtaining his warrant. No officers of the CCSO were involved in any aspect of Spencer's obtaining a warrant. Indeed, no investigation was ever conducted by law enforcement at any time during the pendency of the case against Danjczek.

22.     Although no investigation was conducted, on May 15, 2015 Danjczek was arrested by Deputy Ayers of the CCSO and served with a warrant of arrest for larceny pursuant to Virginia Code §18.2-96. The matter was set for trial on June 30, 2015, in the Caroline County General District Court. (Plt Ex. No. 8– Arrest Warrant).

23.     On May 15, 2015, Danjczek retained the Law Offices of Vincent L. Robertson, Sr., Esq. as counsel.

24.     On May 19, 2015 Mahoney contacted Danjczek to inform her that she (Danjczek) had 'made' Virginia Lawyers Weekly. Mahoney emailed Danjczek a copy of the article.

25.     On May19, 2015 Danjczek filed a motion in Caroline County Circuit Court requesting the appointment of a Special Prosecutor to represent the Commonwealth of Virginia in all pending and future cases in which she was involved as defense counsel in the County of Caroline. On May 20, 2015 Judge Kelly of the Caroline County Circuit Court heard Danjczek's Motion for a Special Prosecutor. The Court found that Spencer had been removed by that Court on two prior occasions for failure to maintain impartiality. Additionally, the Court found that there had been several recent incidents which evince Spencer's lack of impartiality towards Danjczek's clients. Based upon these findings and Spencer's acknowledgment that he was being investigated by the Virginia State Police for assault against Danjczek, the Court appointed a Special Prosecutor for all cases in all Caroline County Courts where Danjczek is counsel of

record for defendant. (Plt Ex. No. 9- Order Appt. Spec. Pros.)

26.    On May 20, 2015, Mahoney contacted Danjczek and spoke about his running for Caroline County Commonwealth's Attorney against Spencer.

27.    On May 21, 2015, Judge Kelly, on Spencer's motion, appointed Shannon Taylor, Henrico County Commonwealth's Attorney as Special Prosecutor in the larceny case filed against Danjczek. Attorney Michael Huberman, Henrico County Deputy Commonwealth's Attorney was assigned by Taylor to prosecute Danjczek. (Plt Ex. No. 10- Order Appt Spec. Proc.).

28.    On May 22, 2015, Mahoney, knowing that Danjczek was represented by counsel and that a Special Prosecutor had been appointed to prosecute the larceny case filed against Danjczek, nevertheless called Danjczek directly and stated that he had an offer for her concerning the criminal larceny case wherein she was the defendant.

29.    Mahoney stated the following:

   a.  That he had spoken to Spencer and that Spencer had agreed to drop the charges against Danjczek and in turn Spencer expected the charges against him, under investigation by the Virginia State Police to be dropped.

   b.  Mahoney further stated that Danjczek's business had been hurt by the situation and that it was only going to get worse.

   c.  Mahoney also stated that, as a result of the larceny charge filed against Danjczek, the community now had a negative opinion of Danjczek and that she needed to make all of this go away.

   d.  As part of the agreement proposed by Spencer via Mahoney, Danjczek would have to agree not to bring civil charges against Spencer.

30.     On May 26, 2015 Mahoney approached Danjczek in person and asked to speak to her. Danjczek informed Mahoney that he would need to speak to her attorney.

31.     On May 28, 2015 Mahoney informed Danjczek that he was running for Caroline County Commonwealth's Attorney.

32.     On Tuesday, the June 2, 2015, Danjczek was informed that she was being removed from the Court Appointed Counsel list for all Caroline County courts.

33.     On or about June 5, 2015, Mahoney, knowing that Danjczek was represented by counsel, and that she had previously requested that he not contact her directly, called Danjczek again and left a voice message stating that he has called her three times and that she had not returned his calls.

34.     On June 9, 2015, knowing that Danjczek was represented by counsel and that she had previously requested that he not contact her directly, Mahoney called Danjczek and asked to meet with Danjczek and her attorney. Danjczek did not respond to that request.

35.     June 10, 2015, knowing that Danjczek was represented by counsel, and that she had previously requested that he not contact her directly, Mahoney contacted Danjczek again and informed her that he needed to meet with her and her attorney as soon as possible. Mahoney stated that the meeting could be done by telephone if necessary. Danjczek then advised Mahoney that she would be contacting her attorney.

36.     Mahoney then informed Danjczek that this meeting was to be about putting Danjczek back into the good graces of the citizens of Caroline County. Mahoney advised Danjczek that the petit larceny charge has given Danjczek and the County of Caroline a black eye. That he has been learning what is on the mind of the voters. That Danjczek has lost lots of potential business, and that she would never be able to quantify in terms of dollars how costly

this has been to her. That he (Mahoney) and Danjczek needed to fix it. Mahoney further stated

that he and Danjczek needed to talk tomorrow because he needed to talk to a few other people

involved. He stated that he needed to talk to the Special Prosecutor (Mike Huberman). That

afterwards, he would then write an article and submit it to the Caroline Progress by June 17,

2015. He further stated that: "I think you want me thinking happy thoughts when I write the

article."

37.     At approximately 9:40 a.m. on June 10, 2015, at the behest of Mahoney, Sgt.

Nutter of the CCSO called Danjczek on her personal phone. They spoke for over forty minutes.

The following was stated by Sgt. Nutter:

a.     Nutter stated he wanted to give Danjczek a heads up that Tony Spencer is

planning on filing a letter to have her removed from the Caroline County Court

Appointed Counsel Lists. Nutter said that Spencer was going to use everything he

had on Danjczek to do so. Nutter stated that this was a conversation between him

and Spencer in Spencer's office and that no one else was present during the

conversation.

b.     Nutter stated that Mahoney had worked out an agreement that if Danjczek would

call off the investigation with the State Police and not file any lawsuits, then

Spencer would state that his actions in Court where due to a lapse in maturity and

that he would agree to bury all the information he has on Danjczek in the sand.

Nutter stated that Danjczek's attorney needed to let any lawsuits go. He stated that

he knows that even if the information is not true, Spencer would use it for probable

cause and spin it and make people believe that it is true.

c.     Nutter then said that Spencer would be making allegations to tarnish Danjczek's

reputation if the drama continues. He stated that Spencer is going to come out swinging against not only Danjczek, but Investigator Marshall Ellet and Sheriff Anthony Lippa of the CCSO.

d.  Nutter stated that Mahoney had asked him to call Danjczek to further explain the severity of the situation. He asked that he talk to Danjczek because of Nutter's good working relationship with her. Nutter said that Mahoney also felt that Danjczek may listen to Nutter. Nutter further stated that he and Mahoney were friends. When asked by Danjczek why he was contacting her on Mahoney's behalf, Nutter responded that Mahoney had directly asked him to do so. Mahoney stated to Nutter that it was ok that Nutter informed Danjczek that it was coming from him (Mahoney).

38.    Danjczek refused Spencer and Mahoney's offer but believing the threats to be credible, contacted the Virginia State Police and reported the threats made by them.

39.    On June 10, 2015, Mahoney contacted the Special Prosecutor Attorney Michael Huberman in reference to the Danjczek matter. Mahoney reportedly introduced himself as the *next* Commonwealth's Attorney for Caroline County. He further made unsolicited suggestions as to how the Danjczek matter should be resolved. Based upon the assertions made and the nature of the conversation, Huberman, reported Mahoney's contact and conversation to the Virginia State Police and the Virginia Attorney General's Office.

40.    On June 30, 2015 the criminal case against Danjczek was heard in Caroline County General District Court and dismissed with prejudice.

41.    On August 19, 2015, Judge Kelly, without notice to Danjczek, removed Attorney Linda Scott as Special Prosecutor over cases wherein Danjczek's was counsel for criminal

defendants and appointed Mahoney, with an effective date of September 1, 2015.

42.     Judge Kelly was contacted by Attorney Huberman in reference to the appointment. On August 20, 2015, she promptly vacated her order appointing Mahoney.

43.     As previously threatened, on or about August 20, 2015, Spencer, in furtherance of his threat to Danjczek, sent a forty-three page document to Virginia Lawyers Weekly and the Richmond – Times Dispatch alleging that Investigator Marshall Ellet of the CCSO had withheld exculpatory evidence in cases wherein Ellet was the investigating officer.

44.     This is information that Spencer promised to "bury in the sand" if Danjczek accepted his offer not to sue him and not to pursue the assault and battery charge against him.

45.     The emotional and psychological stress as a direct result of both Mahoney and Spencer's willful, wanton and malicious acts have caused her to seek professional therapy, counseling and mood stabilizing drugs to aid in her mental and emotional health.

### Statement of Causes of Action

### COUNT ONE – 42 U.S.C. §1983: Violation of Federal Constitutional Rights (False Arrest and Wrongful Seizure)

46.     Plaintiff re-alleges and incorporates as though set forth fully herein the relevant allegations contained in paragraphs 1 through 45.

47.     Spencer knew that his allegations of petit larceny by Danjczek were malicious, and without probable cause. Indeed, the manual in Danjczek's possession had been so since 2009. Furthermore, Spencer knew that there was absolutely no indicia of evidence that the DUI manual in question was ever the property of Spencer or his office. Spencer also knew that he had no claim of right to the manual under any set of circumstances. This fact became clearly evident when Judge Reibach (a former defense attorney with years of extensive experience with DUI traffic cases) asked Spencer for the manual that he had forcibly taken from Danjczek and

returned it directly to her.

48.     Knowing all of the above, on May 15, 2015, Spencer personally went to the Magistrate and swore out a warrant for the arrest of Danjczek.

49.     Without an investigation having been conducted, Danjczek was arrested by Deputy Ayers of the CCSO and served with a warrant of arrest under Virginia Code 18.2-96. The matter was set for trial on June 30, 2015, in the Caroline County General District Court and dismissed with prejudice.

50.     Danjczek maintained her innocence throughout.

51.     The arrest directly resulted in Danjczek's seizure for purposes of the 4th and 14th Amendments of the United States Constitution.

52.     With malice, and either deliberately or with reckless disregard of Danjczek's well established rights under the 4th and 14th Amendments of the United States Constitution, defendant Spencer has violated Danjczek's constitutional rights guaranteed to her under the 4th and 14th Amendments of the United States Constitution by causing her to suffer from a false criminal charge, and wrongful seizure of her person.

53.     As a direct result of Spencer's wrongful acts in the violation of 42 U.S.C §1983, Danjczek has suffered mental anguish, damage to her professional reputation, lost income, legal expenses, emotional distress and physical illness. She seeks punitive damages separate and apart from any punitive damages awarded in the other counts wherein punitive damages may be awarded.

**COUNT TWO- Assault and Battery**

54.     Plaintiff re-alleges and incorporates as though set forth fully herein the relevant allegations contained in paragraphs 1 through 53.

11

55.     On May 15, 2015, Spencer, in violation of Virginia Code §18.2-57, assaulted and battered Danjczek when he used physical force against Danjczek's person to obtain possession of a DUI manual owned by her.

56.     Danjczek did not agree nor did she consent to be assaulted by Spencer.

57.     Spencer's assault and battery as set forth in the Complaint caused Danjczek great fear and trepidation.

58.     As a direct result of Spencer's wrongful act Danjczek has suffered mental anguish, damage to her professional reputation, lost income, legal expenses, emotional distress and physical illness. She seeks punitive damages separate and apart from any punitive damages awarded in the other counts wherein punitive damages may be awarded.

## COUNT THREE - Defamation

59.     Plaintiff re-alleges and incorporates as though set forth fully herein the relevant allegations contained in paragraphs 1 through 58.

60.     On May 15, 2015, Danjczek was a licensed attorney in good standing with the Supreme Court of Virginia, the Virginia State Bar, the Courts of Caroline County and other jurisdictions where she practiced.

61.     On that same day, Spencer began to question Danjczek concerning her referral to a DUI manual while she was defending her client in the DUI matter. In the middle of trial, while Danjczek was at the Judge's bench and in front of Judge Reibach, Danjczek's client, courtroom personnel, sheriff deputies, the general public and other members of the Bar, Spencer demanded that Danjczek give him the DUI manual several times. Danjczek did not respond to him and continued with the defense of her client.

62.     At the conclusion of Danjczek's case, Spencer again approached her in open court

12

and demanded that she give the manual to him. Danjczek asked the Judge, who was still on the bench, to instruct Spencer to leave her alone. The Judge instructed Spencer to take the matter outside of the courtroom.

63.     Spencer continued to accuse Danjczek of stealing a DUI manual in open court. (*See* Ex(s). 1, 2, 4, 5, 6, &7).

64.     Each of the aforementioned exhibits tell how Spencer accused Danjczek of stealing the DUI manual.

65.     On June 30, 2015 the charges were proven to be false when the criminal case against Danjczek was heard in Caroline County General District Court and dismissed with prejudice.

66.     As a direct result of the false allegations involving a crime of moral turpitude, Danjczek's reputation as an attorney has been irreparably harmed.

67.      Spencer's willful, wanton and malicious acts have caused emotional and psychological stress to Danjczek; have caused her to seek professional therapy for anxiety and depression. She has been prescribed mood stabilizing drugs to aid in her mental, psychological and emotional health from trauma brought on by these false allegations.

68.     As a direct result of the false allegation and defamation, Danjczek has suffered mental anguish, damage to her professional reputation, lost income, legal expenses, emotional distress and physical illness. She seeks punitive damages separate and apart from any punitive damages awarded in the other counts wherein punitive damages may be awarded.

### COUNT FOUR – Abuse of Process

69.     Plaintiff re-alleges and incorporates as though set forth fully herein the relevant allegations contained in paragraphs 1 through 68.

70.     Acting willfully, wantonly and with malice, Spencer personally initiated a criminal prosecution against Danjczek immediately following his assault on her. Spencer's ulterior motive was to force her into not pursuing charges for assault and battery against him.

71.     After obtaining the warrant, Spencer began threatening to release information that would damage Danjczek's reputation in the community if she would not agree to settle the matter in a manner favorable to Spencer.

72.     Spencer's willful, wanton and malicious acts have caused emotional and psychological stress to Danjczek; have caused her to seek professional therapy for anxiety and depression. She has been prescribed mood stabilizing drugs to aid in her mental, psychological and emotional health from trauma brought on by these false allegations.

73.     As a direct result of the false allegation and defamation, Danjczek has suffered mental anguish, damage to her professional reputation, lost income, legal expenses, emotional distress and physical illness.

74.     She seeks punitive damages separate and apart from any punitive damages awarded in the other counts wherein punitive damages may be awarded.

## COUNT FIVE – Malicious Prosecution

75.     Plaintiff re-alleges and incorporates as though set forth fully herein the relevant allegations contained in paragraphs 1 through 74.

76.     Acting willfully, wantonly and with malice, Spencer personally initiated a criminal prosecution against Danjczek immediately following his assault on her. This was done to detract from and provide cover for his assault and battery against Danjczek. A charge that he knew he could ultimately be found guilty of.

77.     Spencer knew that the criminal warrant lacked probable cause for a number of

14

reasons and that the charge would eventually be dismissed against Danjczek.

78.     Once Investigator Wright told Spencer that he thought that he had assaulted Danjczek, Spencer stated that: "He was just so mad about the whole thing."

79.     On June 30, 2015, Danjczek was before the Caroline County General District court to answer to the charge of petit larceny first offense in violation of §18.2-96 of the Virginia Code. Spencer did not appear. The matter was dismissed with prejudice.

80.     Spencer's willful, wanton and malicious acts have caused emotional and psychological stress to Danjczek; have caused her to seek professional therapy for anxiety and depression. She has been prescribed mood stabilizing drugs to aid in her mental, psychological and emotional health from trauma brought on by these false allegations.

81.     As a direct result of the false allegation and defamation, Danjczek has suffered mental anguish, damage to her professional reputation, lost income, legal expenses, emotional distress and physical illness.

82.     She seeks punitive damages separate and apart from any punitive damages awarded in the other counts wherein punitive damages may be awarded.

**COUNT SIX–Violation of Va. Code § 18.2-499 & 18.2-500**

83.      Plaintiff re-alleges and incorporates as though set forth fully herein the relevant allegations contained in paragraphs 1 through 82.

84.     Danjczek is a solo practitioner with her principal place of business being located in Caroline County since 2009. Her primary source of income is derived from the practice of law.

85.     Her clients are drawn from the public.

86.     Prior to the incident in question, Danjczek received a significant number of clients

15

by appointment from the Caroline County Courts.

87.     At some point during the latter half of 2015, Spencer decided to seek re-election for the office of Commonwealth Attorney for Caroline County.

88.     On November 1, 2015, Spencer held a rally in the Lake Land Or community.

89.     Spencer recorded the speech that he gave that day. The speech can be found on YouTube entitled "The Whole Truth". *See* Plt. Ex. 12. (CD ROM)[2]

90.     At 4 minutes and 44 seconds into his speech, Spencer reveals that he and Mahoney had been discussing a deal and that the deal was finally made on June 7, 2015.[3]

91.     The agreement was that if Spencer decided not to run and if he endorsed Mahoney for Commonwealth Attorney, and if Mahoney ran unopposed, that Mahoney would hire him as his chief Deputy Commonwealth's Attorney.

92.     There were some challenges that the two had to overcome in order for the "deal" to work.

93.     Spencer needed to, as Mahoney put it, "remain employable".

94.     Danjczek's criminal assault case against Spencer presented a problem for both Spencer and Mahoney in that respect.

95.     If Spencer was found guilty of the assault and battery, it would have significant political implications for his re-election bid.

96.     A conviction would also potentially harm Mahoney's political credibility if he hired Spencer as his chief Deputy Commonwealth Attorney.

97.     Mahoney seized the opportunity and convinced Spencer not to run for re-election

---

[2] Although exhibit 12 was also previously submitted, it was done so while requesting that it be included as "newly discovered evidence. *See* Dkt.20.

[3] This is around the time that Mahoney began to pour it on heavy with regard to getting Danjczek's compliance and cooperation.

by promising him a position on his staff. As Spencer put it, "I sold my soul".

98.     Mahoney would thereby benefit by running unopposed and Spencer would have a job paying $95,000.00 per year.

99.     Spencer states in the video that Mahoney told him that he had to "bury" the information on Det. Ellet and not disclose it. Spencer states that he took exception to that. He states that he contacted the Virginia State Bar (VSB) concerning information of a criminal act by Det. Ellet and the VSB told him that he had to disclose it. He further states that he informed Mahoney of this intent to release the information and shortly thereafter, around the end of June the deal fell apart. [4]

100.    Although, not specifically stated on the video, it's fair to infer that the parties also agreed that Mahoney would be responsible for convincing Danjczek to dismiss her criminal charges against Spencer.

101.    To that end, Mahoney pulled out all of the stops to achieve that objective.

102.    As previously alleged in the complaint, Mahoney repeatedly contacted Danjczek concerning her case against Spencer, urging her to drop the charges.

103.    On May 22, 2015, Mahoney, knowing that Danjczek was represented by counsel and that a Special Prosecutor had been appointed to prosecute the larceny case filed against Danjczek, nevertheless called Danjczek directly and stated that he had an offer for her concerning the criminal larceny case wherein she was the defendant.

104.    Mahoney stated the following:

a.   That he had spoken to Spencer and that Spencer had agreed to drop the charges

---

[4] Interestingly, Spencer did not get this notion to contact the VSB or release this information on Ellet until after the charge against Danjczek was dismissed and a civil action against him was imminent. The information on Det. Ellet was released on August 20, 2015, four days prior to Spencer being named in the current action.

against Danjczek and in turn Spencer expected the charges against him, under
investigation by the Virginia State Police to be dropped.

b.  Mahoney further stated that Danjczek's business had been hurt by the situation
and that it was only going to get worse.

c.  Mahoney also stated that, as a result of the larceny charge filed against Danjczek,
the community now had a negative opinion of Danjczek and that she needed to
make all of this go away.

d.  As part of the agreement proposed by Spencer via Mahoney, Danjczek would
have to agree not to bring civil charges against Spencer.

e.  Mahoney continued to do this in spite of the fact that she was represented by
counsel and she had repeatedly told him not to contact her.

f.  Mahoney also contacted the Special Prosecutor on the Danjczek DUI case and
attempted to influence the outcome of the criminal case.

g.  And as previously alleged, Mahoney had Det. Nutter contact Danjczek to tell her
that Spencer was going to come after her reputation and her business if she did
not agree to the deal.[5]

h.  Mahoney also told Danjczek that Spencer had unfavorable information on her in
a file in his office that he would disclose to the public if she did not go along
with the deal.

105.    Afraid for both her reputation and her business and her continued freedom,

---

[5]  Nutter stated that Mahoney had worked out an agreement that if Danjczek would call off the investigation
with the State Police and not file any lawsuits, then Spencer would state that his actions in Court where due to a
lapse in maturity and that he would agree to bury all the information he has on Danjczek in the sand. Nutter stated
that Danjczek's attorney needed to let any lawsuits go. He stated that he knows that even if the information is not
true, Spencer would use it for probable cause and spin it and make people believe that it is true.

Danjczek contacted the Virginia State Police.

106.     Spencer, when questioned by a news organization about the pending litigation, stated that Danjczek was a lawyer with a terrible reputation for dishonesty.

107.     Spencer also made it known that he was keeping a file on Danjczek and that he would use the information contained in the file to harm Danjczek's business and reputation.

108.     The foregoing illustrates both Mahoney and Spencer's motive to maliciously injure Danjczek's reputation and business.

109.     As a result of the conspiracy by and between Spencer and Mahoney, both Danjczek's reputation as an attorney and her law practice were severely injured. She has also suffered emotional and mental anguish. Therefore she seeks loss profits, compensatory damages, punitive damages separate and apart from any punitive damages that may be awarded in other counts contained in the complaint, treble damages, costs, reasonable attorney fees associated with bringing this matter.

## COUNT SEVEN – Intentional Infliction of Emotional Distress

110.     Plaintiff re-alleges and incorporates as though set forth fully herein the relevant allegations contained in paragraphs 1 through 109

111.     Spencer and Mahoney intended to cause Danjczek severe emotional harm. So much so that she would crack under their intense psychological pressure and yield to their threats and support their agenda.

112.     They both have been working in concert to cause grave harm to her reputation well after the defamatory statements were made by Spencer.

113.     Spencer's acts were outrageous, willful, wanton and malicious.

114.     Mahoney, having clear knowledge that Danjczek had retained counsel, ignored

her wishes and warnings, and repeatedly contacted her with clear intent to force her into compliance. This is evidenced by the incessant calls and repeatedly ignoring her wish to be left alone.

115.    When Mahoney did not contact her directly, he and Spencer used Nutter to do so.

116.    Spencer has been relentless in his personal attacks against Danjczek. Some of these incidents have not gone unnoticed by Judges who have observed Spencer's antics towards Danjczek.

117.    Judge Kelly found that there had been <u>several</u> recent incidents which evinced Spencer's lack of impartiality towards Ms. Danjczek's clients…. "the Court found that Mr. Spencer cannot act with impartiality and fairness in cases involving Ms. Danjczek and ordered a Special Prosecutor appointed in all cases in all Caroline County Courts where Ms. Danjczek is counsel of record for the Defendant."

118.    In one instance, Spencer stated that he absolutely would not accept a plea offer from a criminal defendant so long as Danjczek was his defense counsel. Danjczek ended up withdrawing from the case. Attorney Jean M. McKeen entered her appearance on behalf the defendant. A plea deal was reached. (Plt. Ex. No.11 - McKeen Sworn Affidavit)

119.    Danjczek was removed from the Court Appointed Counsel list in all Caroline County Courts. This caused her considerable financial harm and further exasperated her mental health condition and earning potential.

120.    Spencer's criminal allegation wrongfully and maliciously characterized Danjczek as a thief and a person lacking moral turpitude caused her professional reputation to be severally damaged.

121.    Danjczek has had to attempt to continue her practice under a cloud of suspicion as

to whether she is a thief.

122.     She has also has considerable anxiety concerning what information Spencer intends to use to further destroy her reputation

123.     Spencer's wanton and malicious acts were intended to cause Danjczek severe psychological harm. He succeeded. The acts have caused emotional and psychological stress to Danjczek and have caused her to seek professional therapy for anxiety and depression. She has been prescribed mood stabilizing drugs to aid in her mental, psychological and emotional health from trauma brought on by these false allegations. Danjczek suffers from mood swings, depression, insomnia and anxiety.

WHEREFORE, the Plaintiff has suffered damages that include, but are not limited to compensatory damages, costs associated with hiring legal counsel for the petit larceny charge and its expungement, representation of Danjczek through all phases of the Virginia State Police investigation, punitive damages as prescribed by law for each count separately, loss of past and future revenue, reduction in earning capacity and other legal entitlements.

The Plaintiff requests judgment specifically as follows:

a.   A declaration of this Court that defendant Spencer, acting under color of state law, has denied Danjczek her rights guaranteed to her under the United States Constitution.

b.   Compensatory damages in the amount of $52,000,000.00;

c.   Punitive damages in the maximum amount allowable under Virginia law as applicable per count.

d.   Pre and post judgment interest;

e.   The Defendant be held liable for all costs, fees and damages;

f.   With regard to Count One, compensatory payment of Danjczek's costs and attorney's fees pursuant to 42 U.S.C. §1983; and other such relief as the Court may deem just and equitable.

g.   With regard to Count Six she seeks loss profits, compensatory damages, punitive damages separate and apart from any punitive damages that may be awarded in other counts contained in the complaint, treble damages, costs, and reasonable attorney fees associated with bringing this matter.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues triable by jury.

Respectfully submitted,
Melissa Elizabeth Danjczek

By Counsel:_____/s/_____
Vincent L. Robertson, Sr., (VSB 66707)
Law Offices of Vincent L. Robertson, PLLC
1557 East Main Street
Richmond, Virginia 23219
Telephone: (804) 644-0771
Facsimile:   (804) 918-0301
Email: Vincent.robertson@4vlaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 1, 2016 a true and accurate copy of the Plaintiff's First Amended Complaint was electronically filed with the Clerk of the Court using the CM/ECF system, I also hereby certify that, a true and accurate copy of the DVD proposed as plaintiff's Exhibit #12 was sent to the defendant via first class mail, postage prepaid to the following:

>   William W. Tunner
>   *Thompson*McMullan
>   100 Shoe Slip
>   Richmond, VA 23219-4140
>   *Counsel for Spencer*

>   By Counsel:  _____/s/_____
>   Vincent L. Robertson, Sr., (VSB 66707)
>   Law Offices of Vincent L. Robertson, PLLC
>   1557 East Main Street
>   Richmond, Virginia 23219
>   Telephone:   (804) 644-0771
>   Facsimile:    (804) 918-0301
>   Email: Vincent.robertson@4vlaw.com

23